831 So.2d 692 (2002)
GOLD, VANN & WHITE, P.A., Appellant,
v.
Allen P. FRIEDENSTAB, M.D., Appellee.
No. 4D01-4564.
District Court of Appeal of Florida, Fourth District.
October 16, 2002.
Rehearing Denied December 13, 2002.
*693 Richard M. Goldstein and Keith R. Gaudioso of Goldstein, Tanen & Trench, P.A., Miami, for appellant.
Craig M. Rappel and Robert Rappel, D.O. of Rappel & Rappel P.A., Vero Beach, for appellee.
STONE, J.
We reverse a summary judgment entered against Gold, Vann & White, P.A. (GVW), precluding its enforcement of a restrictive covenant against Doctor Friedenstab.
The trial court erred in deciding that no issues of fact remained as to the enforceability of the contract where portions of the contract are invalid.
Friedenstab was employed as a physician in the OB/GYN Department of GVW from 1986 to 1998. His employment was initially governed by a 1986 employment agreement. Friedenstab eventually became a shareholder and the parties entered into an "Employment Agreement Stockholder" agreement in 1989. The agreement contained a covenant not to compete, which included a provision that should Friedenstab remain employed for a period of one hundred twenty months after January 1, 1989, the provisions of the non-competition agreement would no longer be of force and effect.
In 1989, GVW entered into a service agreement with Phycor of Vero Beach, Inc. Phycor was to provide GVW with facilities, equipment, supplies, support staff, physicians, and management services. The service agreement was amended in 1992 and 1997. The 1997 service agreement contained a provision that in exchange for its services, Phycor would receive an annual fee which would equal $12,000.00 over and above clinic operating expenses, 12% of net clinic revenues, and 25% of additional managed care payments.
In partial consideration of the execution of the 1997 Phycor agreement, Friedenstab agreed to amend his 1989 agreement by removing the ten year limitation period on the covenant not to compete.
In March 1998, GVW gave Friedenstab notice of his termination. In September 1998, Friedenstab opened a new practice. GVW then filed a complaint for breach of contract and to enforce the covenant not to compete. Friedenstab filed a counterclaim that included a count for declaratory relief to determine the legality and enforceability of the 1997 physician practice management service agreement between GVW and Phycor.
Friedenstab asserts that the restrictive covenant in the employment agreement *694 was unenforceable because the service agreement between GVW and Phycor was an illegal fee splitting arrangement and, because the service agreement served as consideration for the restrictive covenant, the restrictive covenant could not survive.
In granting Friedenstab's motion for partial summary judgment on the declaratory relief count, the trial court concluded that the restrictive covenant was unenforceable because portions of the agreement between GVW and Phycor amount to unlawful fee splitting.
No managed care payment was ever paid pursuant to the percentage provision in the contract, as the business never had any managed care contracts. The Phycor contract, in effect for over ten years, was cancelled after this dispute began, so that GVW's claim is limited to eighteen months of covenant violation and attorney's fees issues.
Although we agree with the trial court that the 1997 service agreement contained illegal provisions, issues of fact remain as to the severability of those provisions. First, the trial court correctly determined that the 1997 service agreement was illegal in that it provides for fee splitting. Phycor's duties included developing and implementing a public relations program, administering managed care contracts, and providing ancillary services, as approved by the policy board. Although there is no evidence that the public relations and marketing duties resulted in increased business for the P.A., the agreement, itself, impermissibly provided for payment of a percentage of the revenue the management services and practice enhancement would generate and, thus, constituted an indirect method of fees for patient referral in violation of sections 458.331 and 817.505, Florida Statutes (2001). See Crow v. Agency for Health Care Admin., 669 So.2d 1160 (Fla. 5th DCA 1996)(holding that salary based on a percentage of previous year's revenue and a year-end bonus based on current year's revenues would each be in violation of the prohibition on fee-splitting).
Florida Statutes §§ 458.331(1)(i) and 817.505(1)(a) prohibit any split fee arrangement. Section 458.331(1)(i) provides that it is grounds for disciplinary action if a medical provider is:
paying or ... engaging in any split fee arrangement in any form whatsoever with a physician, organization, agency, or person, either directly or indirectly, "for patients referred to providers" of health care goods and services.
Section 817.505(1)(a), provides it is unlawful for any person, including a health care provider, to:
Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage from a health care provider or health care facility;
As reflected in several decisions from the Florida Board of Medicine, the board has interpreted these statutes to prohibit agreements like the one here that allow for the payment of fees to be directly or indirectly related to the referral of patients to health care providers. See In re the Petition for Declaratory Statement of Edmund G. Lundy, M.D., 9 FALR 6289 (Dec. 3, 1987); In re the Petition for Declaratory Statement of Gary R. Johnson and the Green Clinic, 14 FALR 3935 (July 11, 1992); In re the Petition for Declaratory Statement of Magan L. Bakarania, M.D., 20 FALR 395, affirmed, Phymatrix Mgmt. Co. v. Bakarania, 737 So.2d 588 (Fla. 1st DCA 1999). In Bakarania, Bakarania sought a declaratory statement as to the legality of a long-term management *695 agreement between a practice management company and a group practice of licensed physicians. The agreement provided that the company was to provide management services including practice expansion by developing "relationships and affiliations with other physicians and other specialists, hospitals, networks, health maintenance organizations, and preferred provider organizations." The company was to create a physician provider network as well as to evaluate, negotiate, and administer managed care contracts. Id. at 396. The agreement provided that the company would be paid, in part, an annual performance fee equal to 30% of the group practice's net income each year. Id. at 397.
The board, whose decision was upheld by the First District, held that the agreement was a split-fee agreement in violation of section 458.331(1)(i), in that the group practice was required to pay a specified percentage of their net income without regard to the cost of providing services supplied by the company, and without regard to whether the income is from services performed either by the group practice or the group practice's supervision. The board noted that "[a]lthough payment of a reasonable flat fee in return for provision of management services, including practice enhancement, is appropriate and allowable under Florida law, payment of a percentage of the revenue the management services and practice enhancement generate is not permissible." Bakarania, 20 FALR at 398.
In issuing its order, the board distinguished Practice Management Associates, Inc. v. Gulley, 618 So.2d 259 (Fla. 2d DCA 1993), and the other Second District cases that did not find percentage based agreements to be fee splits. The board noted that those cases did not involve any obligation for any activity "that could be construed as providing more extensive referrals of patients." Bakarania, 20 FALR at 398. Furthermore, those cases pre-dated that enactment of the Patient Brokering Act at section 817.505. The board reasoned that its enactment reflects the legislature's intent that "payment of fees or other remuneration directly or indirectly related to the referral of patients to health care providers is no longer to be permitted in Florida." Id. at 399.
As in Bakarania, the service agreement between Phycor and GVW appears to be an impermissible split-fee arrangement. We, too, have considered Gulley and deem it inapposite, as the management contract in that case did not include, directly or indirectly, referral or development of business. 618 So.2d at 260. Similar to the agreement in Bakarania, Phycor was to engage in such activities as negotiating and administering managed care contracts and to design and implement an effective public relations program so as to make the public aware of services at the clinic. Deposition testimony from GVW's practice manager even indicated that Phycor would be responsible for marketing to the public. Such conduct in Bakarania was found to relate to the development of a greater number of patient referrals to the group practice and, as such, the management company could not be paid on a percentage of the revenue it generated. Therefore, this percentage fee arrangement is inappropriate in a circumstance that would constitute a referral. See Crow, 669 So.2d at 1161-62 (holding that a salary or year-end bonus is inappropriate in a circumstance that would constitute a referral).
Notwithstanding that provisions in the Phycor service agreement are invalid, in that it allowed for fee splitting, issues of fact remain as to whether or not the illegal portions were severable. The service agreement contained a severability clause *696 which provided that if any portion of the agreement should be held "invalid, illegal or unenforceable for any reason, the remainder of this Agreement shall be effective and binding upon the parties." Therefore, should the illegal portions be severable, the remainder of the agreement would be legal and the restrictive covenant in Friedenstab's agreement may, therefore, be enforceable.
A bilateral contract is severable where the illegal portion of the contract does not go to its essence and, where, with the illegal portion eliminated, there still remain valid legal promises on one side which are wholly supported by valid legal promises on the other. Slusher v. Greenfield, 488 So.2d 579, 580 (Fla. 4th DCA 1986); Title & Trust Co. of Fla. v. Parker, 468 So.2d 520 (Fla. 1st DCA 1985).
Here, the trial court determined, as a matter of law, that the provisions were not severable. However, with the provision providing for the split fee provision to be stricken, the contract's essential purpose remains intact. Whether the split fee provision went to the essence or essential purpose of the contract is a factual question. See Besco USA Int'l Corp. v. Home Sav. of Am. FSB, 675 So.2d 687 (Fla. 5th DCA 1996)(opining that if the slightest doubt exists as to the presence of an issue of fact, then summary judgment should be granted).
There also remains a fact question as to whether the amendment to the employment agreement was supported by adequate consideration. The trial court's ruling rested on the premise that because the consideration for the restrictive covenant included the execution of the service agreement, then the restrictive covenant could not be enforced after the service agreement was declared invalid.
However, even if the execution of the amendment to the service agreement cannot serve as consideration, it is not the only consideration supporting the 1996 agreement. The agreement also cited to "mutual promises and other monies in hand paid and other valuable consideration." It is not the province of a court to relieve one party of its contractual obligation on the basis of a judicial determination as to the sufficiency of recited consideration given for an obligation. Bayshore Royal Co. v. Doran Jason Co. of Tampa, Inc., 480 So.2d 651, 656 (Fla. 2d DCA 1985). A promise, or payment, no matter how slight, can constitute sufficient consideration for a contract. Ashby v. Ashby, 651 So.2d 246 (Fla. 4th DCA 1995). Here, regardless of whether the cash received was $116,000 or $1,000 for giving up the sunset provision in the restrictive covenant, sufficient consideration existed in the agreement. But see Singleton v. Foreman, 435 F.2d 962, 969 (5th Cir.1970)(holding contract was not severable where greater portion of consideration was eliminated by removal of the illegal provision).
Therefore, an issue remains as to whether the employment contract's essential purpose would be nullified by removal of part of the consideration.
GVW also argues that Friedenstab's failure to join Phycor as a party precludes a declaration on the legality of the service agreement. This issue is not preserved, however, as GVW failed to raise this objection at trial. Florida Rule of Civil Procedure 1.140 governs defenses and when they can be raised. "The Rule clearly contemplates four instances in which a party may raise the failure to join an indispensable party: first, in the responsive pleading, either the answer or reply; second, by a motion to dismiss under Rule 1.140(b); third, by motion for *697 judgment on the pleadings; and fourth, at the trial on the merits." Engel Mtg. Co. v. Dowd, 355 So.2d 1210 (Fla. 1st DCA 1977). The defense of failure to join an indispensable party may not be raised after an adjudication on the merits and, thus, could not be raised for the first time on appeal.
We, therefore, reverse and remand for an evidentiary hearing concerning the remaining issues.
POLEN, C.J. and DAVIDSON, LISA, Associate Judge, concur.