853 So.2d 500 (2003)
CONSOLIDATED RESOURCES HEALTHCARE FUND I, LTD., d/b/a Lakeside Health Center, Appellant,
v.
Deborah FENELUS, as Personal Representative of the Estate of Ruth Spruill, deceased, Appellee.
No. 4D03-563.
District Court of Appeal of Florida, Fourth District.
July 30, 2003.
*501 Scott M. Fischer and Christopher B. Hopkins of Cole, Scott & Kissane, P.A., West Palm Beach, for appellant.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, L.L.P., and Craig M. Goldenfarb of Law Offices of Craig Goldenfarb, West Palm Beach, for appellee.
*502 OWEN, WILLIAM C., JR., Senior Judge.
On this non-final appeal from an order denying appellant's motion to compel arbitration, the issue is the validity of a nursing home admission agreement which contained an arbitration clause. The trial court found the agreement invalid because it had not been signed by a representative of the nursing home and was "boiler plate." We reverse.
Appellee, as personal representative of the estate of her mother, Ruth Spruill (the decedent), filed a negligence and wrongful death action against appellant, the operator of the nursing home in which the decedent lived during her last three years. Essentially, the complaint alleged appellant failed to provide the decedent adequate health care, protective services, and support services, causing the decedent various health problems which eventually led to her death.
Appellant filed a motion to compel arbitration based on an "agreement for care" (the agreement) which the decedent's son, Eugene Spruill (Eugene), executed on her behalf as her health care surrogate in connection with the decedent's admission to the nursing home. The agreement, the relevant portions of which were attached to the motion, required the nursing home, among other things, to "[f]urnish room, meals as required by the resident, nursing care, personal care, or custodial care, as may be required for the well-being of the resident." Of particular significance to this case, it also provided, in Paragraph 12, as follows:
12. OPTIONAL ARBITRATION CLAUSE (If the parties to this Agreement do not wish to include the following arbitration provision, please indicate so by marking an "X" through this clause. Both parties shall also initial that "X" to signify their agreement to refuse arbitration.) Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
The provision was not "X"ed through or initialed.
Although the court held two "evidentiary" hearings on the motion, the only evidence consisted of Eugene's deposition and a deposition of Susan Taylor (Taylor), Director of Admissions and Marketing for the nursing home. The relevant facts developed by the depositions are neither complex nor disputed on material matters. As fifty year old Eugene, himself in poor health, watched his once active seventy-two year old mother begin to mentally decline, he concluded he could no longer care for her by himself. He and his mother then decided that she should move into appellant's nursing facility. Mrs. Spruill was admitted into the nursing home on December 2, 1997, but because Eugene had to work that day he, as her health care surrogate, did not sign the admission paperwork until two days later. The admission packet, which Taylor gave him to read and to sign, contained at least five items, including the agreement. Eugene testified he had a college education and had taught school for eleven years, but that he did not read the documents nor did he ask Taylor to explain them, since he believed he was signing forms simply to admit his mother into the nursing home. Taylor testified she also signed the various documents and that she did so in her capacity as a nursing home representative. The problem here, however, and central to the trial court's ruling, is that Taylor, instead of signing *503 the agreement on the line designated for the nursing home representative's signature, signed on the line designated "witness" to the right of Eugene's signature. When questioned about this, she testified that it was her practice to do so when someone other than the resident himself or herself signed the agreement; otherwise, if the resident signed, then she would ordinarily sign on the line for the nursing home representative.[1]
In its order denying the motion, the court stated its grounds: that no valid contract existed because the nursing home representative signed the agreement only as a witness and not in her capacity as the nursing home representative; that this case is distinguishable from the case on which appellant relied, Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero, 827 So.2d 338 (Fla. 3d DCA 2002), because in that case there was no place for the nursing home representative to sign, whereas in this case there was; and, furthermore, that a valid contract did not exist because the subject contract was a "boiler plate contract."
At the outset, the parties dispute the standard of review, appellant contending that the de novo standard applies as the issue is one of law, while appellee contends that the abuse of discretion standard applies because the trial court, in making its findings, considered the evidence surrounding the execution of the agreement. The trial court undoubtedly did consider the evidence in making its finding that Taylor signed the agreement solely as a witness and not as a representative of the nursing home. The issue here, however, is not whether we accord deference to the trial court's factual finding but whether the finding will sustain the court's legal conclusion based thereon, i.e., that the agreement containing the arbitration clause is thereby rendered invalid. Our review on that issue is de novo.
We disagree that this case is distinguishable from Lopez-Silvero in any meaningful respect. In that case, as in this one, a suit was brought against a nursing home alleging improper care and the nursing home sought to compel arbitration pursuant to its admission contract. The Third District reversed the trial court's denial of the motion, concluding that even though the nursing home did not sign the contract at all, the contract was still binding:
A contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract. See Gateway Cable T.V., Inc. v. Vikoa Contruction [sic] Corp., 253 So.2d 461 (Fla. 1st DCA 1971). As noted in Gateway Cable T.V., Inc. v. Vikoa Contruction [sic] Corp., 253 So.2d at 463, "A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." See also Sosa v. Shearform Mfg., 784 So.2d 609 (Fla. 5th DCA 2001) (parties may be bound to the provisions of an unsigned contract if they acted as though the provisions of the contract were in force.)
Here, both the resident and IHS acted as if they had a valid contract. IHS performed under the contract by admitting the resident and providing him with nursing home care for over two months. Moreover, IHS signed five other documents *504 relating to the resident's admission, which were incorporated by reference in the admission contract. Clearly IHS assented to the terms of the admission contract, including its arbitration clause.
Id. at 339. The court reversed and remanded with instructions to grant the motion. Id.
The fact that the contract in the Lopez-Silvero case had no place for the nursing home to sign, whereas the contract in the instant case did, is a distinction without a difference. The Lopez-Silvero case turned on assent by performance, not the presence or absence of a space for a signature. Here, appellant's assent to the contract has been demonstrated by its actions indicating assent, including its performance of the contract for a period of more than three years. See, Lopez-Silvero. It is clear appellant meant to be bound by the contract which it asked Eugene to sign on his mother's behalf.[2] Thus, we hold the trial court erred in concluding that, merely because the document contained no signature purporting to be that of the nursing home representative, no valid contract arose.
Appellee argues that notwithstanding the nursing home's performance, there was not a meeting of the minds with respect to the agreement to arbitrate. Although Eugene testified he did not understand that the agreement contained an arbitration provision, that was simply because, as he also testified, he did not read it. He did not testify that he was forced or coerced to sign it, nor that he was not given an opportunity to read it. In fact, Eugene testified that he signed the agreement willingly. Taylor testified that she allowed Eugene to read the package of documents of which the agreement was a part, and was available to answer his questions; Eugene did not ask any. A party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it. See Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347 (Fla.1977) ("No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.").
The trial court also found the agreement to be invalid because it was a "boiler plate contract". Taken literally, such a finding would be of no consequence, since the mere fact that a contract includes boiler plate language is not sufficient to invalidate it. However, we believe, as appellee has suggested in her brief, the trial court intended its use of "boiler plate" as shorthand for a finding that the arbitration clause was unconscionable. Thus considered, the finding should not be given the cursory dismissal its literal reading would permit for, as appellee correctly argues, unconscionable contracts will not be enforced by the courts, see, Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999), rev. denied, 763 So.2d 1044 (Fla. 2000), a case which the parties argued before the trial court.
In the Powertel case, the court explained that a determination of unconscionability required a finding that the contract is both procedurally and substantively unconscionable. Procedural unconscionability relates to the manner in which the contract was entered, including issues such as relative bargaining power and the *505 parties' ability to understand the disputed terms, while substantive unconscionability refers to the fairness of the terms of the agreement itself. The court in Powertel found both requirements met with respect to the arbitration clause added to the cellular telephone contract in question, where the clause was added unilaterally when the telephone company sent it to customers as an insert in the monthly bill and they could not reject the clause and continue to use the plan, in connection with which they had purchased equipment and obtained telephone numbers that worked only with that company's service. The clause was substantively unconscionable in that it limited the company's liability to actual damages, removed its exposure to a class action, and forced customers to waive important statutory remedies.
In this case, appellee argues the court recognized that Eugene was an older manhowever, he was only fifty years old at the time, and there was no evidence that he was lacking in capacitywithout business experience and that he had little bargaining power since his mother had already been admitted to the nursing home, its lawyers had drafted the agreement, and its terms were never explained to him. However, as we have discussed above, Eugene conceded he willingly signed the agreement, Taylor testified he had the opportunity to read it and ask questions before signing it, and the arbitration clause not only did not appear in small print, but it was titled in boldface and could have been refused by "X"ing it out.[3] We hold that appellee did not demonstrate procedural unconscionability by the mere act of appellant's including the arbitration clause in question (and an optional one at that) within the paperwork that Eugene had to sign to admit his mother to the nursing home.
With respect to the substantive prong, appellee argues that the clause would not have been substantively unconscionable had Eugene been given the choice of affirmatively giving up his right to trial, but instead he was deprived of a fundamental right unless he affirmatively indicated otherwise. However, as appellant argues, an arbitration clause need not even be optional in order to be valid; that was just additional evidence that it was fair. We hold there has been no showing of unconscionability sufficient to invalidate the arbitration clause in question.
Finally, appellee argues that the trial court was correct to deny the motion to compel arbitration because there was no agreement that tort claims would be subject to arbitration.[4]Compare Seifert v. U.S. Home Corp., 750 So.2d 633, 642 (Fla.1999) (holding that wrongful death claim against house builder was not subject to arbitration agreement in contract for sale and purchase of house, as the disputethe builder's alleged lack of due care in not designing the home to prevent the air conditioner from pulling in carbon monoxide from the garage and its breach of duty to warn of a known dangerous conditiondid not have a significant relationship to the contract, even though the dispute would not have arisen but for the contract). We find the instant case clearly *506 distinguishable. Here, the agreement containing the arbitration clause obligated appellant to provide appropriate care to the decedent, and the dispute alleges that appellant failed to provide appropriate care. It certainly appears to us that there is a strong nexus between the dispute giving rise to the lawsuit and the contract containing the arbitration clause. That the claim sounds in negligence (failure to exercise reasonable care) rather than breach of contract (failure to fulfill a contractual obligation) does not ipso facto sever an otherwise significant relationship between the contractual obligation and the matter in dispute. The trial court found the dispute to be arbitrable and we do as well.
REVERSED.
WARNER and POLEN, JJ., concur.
NOTES
[1] Since this evidence was by written deposition, the trial court did not have the benefit of viewing the deponent; nonetheless, the trial court expressed the view that she had signed only as a witness to Eugene's signature and not as a representative of the nursing home.
[2] We think it highly unlikely that, after performance for that period, appellant would be heard to disavow any obligation under the contract on the grounds that no nursing home representative had signed on its behalf.
[3] It is not clear what would have happened if Eugene had opted out of the arbitration clause and the nursing home refused to add its own "X"; perhaps the decedent's admission to the nursing home would have been rejected, but there was no testimony to that effect.
[4] While this was not one of the bases on which the trial court denied the motion, neither this court nor the appellee is precluded from sustaining a legally correct judgment by arguments supported by the record. See, Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999).