937 So.2d 263 (2006)
ALTERRA HEALTHCARE CORPORATION (as to Alterra Sterling House of Vero Beach and Clare Bridge Cottage of Vero Beach), Jill McCauley (as to Alterra Sterling House of Vero Beach) and Veronica Schuessler (as to Alterra Clare Bridge Cottage of Vero Beach), Appellants,
v.
Betsy L. BRYANT, by and through William R. Bryant, Sr., her Attorney-in-Fact, Appellee.
No. 4D05-4409.
District Court of Appeal of Florida, Fourth District.
September 13, 2006.
*264 Donna J. Fudge, Connolly C. McArthur and Dennis J. Brennan of Buckley & Fudge, P.A., St. Petersburg, for appellants.
Susan B. Morrison of the Law Offices of Susan B. Morrison, P.A., and Blair N. *265 Mendes of Wilkes & McHugh, P.A., Tampa, for appellee.
HAZOURI, J.
Alterra Healthcare Corporation (Alterra), Jill McCauley (McCauley) and Veronica Schuessler (Schuessler) appeal from a non-final order granting their Motions to Compel Arbitration, but severing numerous arbitration provisions. Appellee, Betsy L. Bryant (Mrs. Bryant), by and through William R. Bryant, Sr. (Mr. Bryant), her attorney-in-fact, cross-appeals this non-final order. We affirm.
In 2004, Mrs. Bryant filed a complaint against Alterra and McCauley, seeking damages for common law negligence and violations of the Assisted Living Facilities Act, sections 400.428 and 400.429,[1] Florida Statutes, which occurred while she was a resident of an assisted living facility called Alterra Sterling House of Vero Beach (Sterling House). Additionally, Mrs. Bryant filed a similar complaint on September 22, 2004 against Alterra and Schuessler for damages arising out of her residency at another assisted living facility known as Alterra Clare Bridge Cottage of Vero Beach (Clare Bridge).[2]
Alterra filed a Motion to Compel Arbitration in both cases, pursuant to an Arbitration Provision in the Residency Agreement (Agreement) executed on October 18, 2002 by Mr. Bryant, as Mrs. Bryant's attorney-in-fact, pursuant to her durable power of attorney. After an evidentiary hearing, the trial court issued an "Order on Defendants' Motion to Compel Arbitration" (Order). The trial court found that the Agreement governed Mrs. Bryant's stay at both Sterling House and Clare Bridge. The trial court found further that the arbitration provision's exclusion of punitive damages, limit on non-economic damages, and prohibition against attorney's fees were void as contrary to public policy, on the basis that chapter 400, Florida Statutes, is a remedial statute. Additionally, the trial court concluded that these three provisions, plus discovery limitations and no right to appeal, were "egregiously unconscionable." According to the trial court, the "egregious substantive unconscionability of the arbitration provisions," coupled with "some quantum of procedural unconscionability," rendered the subject provisions unenforceable.
Accordingly, the trial court severed the following stricken through provisions, finding the remaining written arbitration provisions valid:
PART A: ARBITRATION PROVISION
6. i. The only depositions allowed shall be of experts. No other individuals may be deposed. An expert's deposition shall be limited to six (6) hours per expert and shall be conducted within one 24-hour period, unless agreed to otherwise by mutual consent of the parties.
10. The arbitrator's decision shall be final and binding without the right of appeal.
11. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties to this Arbitration Agreement. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any statutory right to recover attorney fees or costs, actual or statutory.

*266 PART B: LIMITATION OF LIABILITY PROVISION
2. b. Noneconomic damages, such as pain and suffering, shall be limited to a maximum of $250,000.
d. Punitive damages shall not be awarded.
The trial court stayed the proceedings and directed that the cases proceed to binding arbitration. This appeal and cross-appeal followed.
We consider first Alterra's argument that the trial court erred when it held that the waiver of punitive damages and the $250,000 cap on non-economic damages were void as against public policy. The standard of review applicable to a trial court's factual findings is whether they are supported by competent, substantial evidence. Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1023 (Fla. 4th DCA 2005). "However, the standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is de novo." Id. (citing Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003)).
Parties may agree to arbitrate statutory claims, provided the arbitration offers an effective way for vindicating the claimant's statutory rights. See Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th DCA 2003), rev. denied, 874 So.2d 1192 (Fla.2004). An arbitration agreement that contains provisions which defeat the remedial portions of a statute is not enforceable. Id. In Romano, this court found that the Nursing Home Resident's Rights Act (NHRA), sections 400.022 and 400.023, Florida Statutes, is a remedial statute, designed to protect nursing home residents. Id. at 62-63. Although no appellate court has ruled on whether the Assisted Living Facilities Act (ALFA) is a remedial statute, it contains provisions similar to those relied on in Romano to render the NHRA remedial. See id.
ALFA provides for a resident bill of rights, including access to adequate and appropriate health care, and written notice of the rights. § 400.428(1), (2), Fla. Stat. (2005). Residents have a cause of action to enforce their rights under ALFA. § 400.429, Fla. Stat. (2005). The statute also allows for punitive damages in cases of intentional misconduct or gross negligence. § 400.4297, Fla. Stat. (2005). There is no cap on pain and suffering damages. Thus, ALFA is a remedial statute closely akin to the NHRA.
In the instant case, the trial court found that the Agreement's waiver of punitive damages and the $250,000 cap on non-economic damages defeated the remedial purpose of chapter 400, Florida Statutes, finding these provisions void as against public policy. We agree. This court has held repeatedly that arbitration agreements eliminating punitive damages and capping non-economic damages defeat the remedial purpose of the NHRA and are, therefore, void as against public policy. See, e.g., Lacey v. Healthcare & Retirement Corp. of Am., 918 So.2d 333, 334 (Fla. 4th DCA 2005); Romano, 861 So.2d at 61-63; see also Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 298-99 (Fla. 4th DCA 2005) (finding that an arbitration provision's limitation on NHRA's remedies is void as contrary to public policy); SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242 (Fla. 5th DCA 2006) (adopting Blankfeld's reasoning in rendering an arbitration agreement entered into between a nursing home and nursing home patient void as against public policy).
Alterra urges this court to reevaluate its decisions in Blankfeld and Lacey, in light of the Supreme Court of Florida's decision in Unicare Health Facilities, Inc. v. Mort, *267 553 So.2d 159 (Fla.1989). In Mort, the supreme court held that a party may waive its right to attorney's fees under the NHRA by accepting an offer of judgment that is silent as to attorney's fees. Id. at 161. Alterra argues, based on Mort, that the arbitration provisions are enforceable because Mrs. Bryant decided to waive her statutory rights. However, Mort is factually distinguishable from the instant case. It involved a waiver of statutory rights in an offer of judgment, which occurred after a dispute arose, following various settlement discussions, and outside the context of an arbitration agreement. Id. at 159-61. The status of the NHRA as a remedial statute and the waiver or limitation of its remedial provisions as void on public policy grounds were not at issue in Mort. Id. Further, after Mort was decided, this court found repeatedly that arbitration provisions identical to those at issue here violated public policy. See, e.g., Lacey, 918 So.2d at 334; Romano, 861 So.2d at 61-63.
Of note, Blankfeld, Romano and Lacey did not address an agreement's waiver of a right to appeal the arbitrator's decision. The Agreement expressly provides that the Florida Arbitration Code (FAC), sections 682.01, et seq., Florida Statutes governs the arbitration. Alterra contends that the Agreement's waiver of a right to appeal does not contradict the FAC. However, in VoiceStream Wireless Corp. v. U.S. Communications, Inc., 912 So.2d 34 (Fla. 4th DCA 2005), this court concluded that a provision precluding the parties from appealing any arbitration decision was unenforceable because it was in contravention of section 682.20 of the FAC, which provided for a limited right of appeal. VoiceStream, 912 So.2d at 38 (citing Healthcomp Evaluation Servs. Corp. v. O'Donnell, 817 So.2d 1095, 1097 (Fla. 2d DCA 2002)). Accordingly, the complete waiver of a right to appeal any arbitration decision in the instant case is unenforceable as contrary to public policy.
Alterra argues next that the trial court erred in finding the stricken Agreement provisions unconscionable. Although the trial court engaged in an unconscionability analysis and we find no fault with the substance of this analysis, we need not address unconscionability. In Blankfeld, this court found a similar agreement void as contrary to public policy, and determined that it was unnecessary to consider unconscionability. 902 So.2d at 298-99.
Alterra argues further that the trial court had no authority to determine the validity of the limitation of liability provisions. Alterra contends this authority lies solely with the arbitrator. We disagree. "[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). "It is the court's obligation, in deciding a motion to compel arbitration, to determine whether a valid written agreement to arbitrate exists." SA-PG-Ocala, LLC, 935 So.2d at 1242 (citing Global Travel Mktg., Inc. v. Shea, 908 So.2d 392 (Fla.2005); Seifert, 750 So.2d at 633). Thus, the trial court properly considered whether the arbitration and limitation of liability provisions were valid.
Alterra relies primarily on Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc., 543 So.2d 359 (Fla. 1st DCA 1989), and Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86 (Fla. 2d DCA 2005), to support its proposition that the trial court had no authority to determine the validity of the limitation of liability provisions. Both Beaver Coaches and Rollins are distinguishable from the instant *268 case. Beaver Coaches limits an arbitrator's review to limitations of liability that do not pertain to the arbitration clause itself. 543 So.2d at 361-62. Here, the Agreement's limitation of liability provisions are not contained outside the arbitration provision. Rather, they are part of the arbitration provision, under the heading "Arbitration and Limitation of Liability Agreement." Additionally, Rollins instructs that a trial court, rather than an arbitrator, may review a limitation of liability where unconscionability is at issue. 898 So.2d at 87. Unconscionability is clearly at issue in this case, evidenced by Mrs. Bryant's complaint and the trial court's ruling.
Alterra argues similarly that the trial court had no authority to determine the contract's validity as a whole, unless the challenge was to the arbitration clause itself, citing Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). In Buckeye, the Supreme Court of the United States reaffirmed the principle that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 126 S.Ct. at 1210. Buckeye is also distinguishable from this case. Mrs. Bryant did not challenge the validity of the contract as a whole. Rather, she challenged specific arbitration provisions, including a limitation of liability. Thus, Buckeye is inapposite.
Alterra also relies heavily on the Second District's opinion in Bland v. Health Care & Retirement Corp. of America, 927 So.2d 252 (Fla. 2d DCA 2006) to support its contention that the arbitrator must, in the first instance, decide whether to enforce an agreement's remedial limitations. However, the Second District's treatment of this issue in Bland is mere dicta. The court noted: "[O]nce the trial court completes its three-prong task under Seifert, 750 So.2d at 636, we see no reason why the arbitrator, in the first instance, cannot decide whether to enforce the remedial limitations." Bland, 927 So.2d at 258. In addition to being dicta, it offers no support to Alterra's argument because its language is permissive, not mandatory. Further, the trial court's review of the Agreement in the instant case did not make it past the Seifert analysis because it failed the first prong, as it was void as against public policy and unconscionable. Thus, it was not a valid written agreement to arbitrate.
Accordingly, we find that the trial court did not err in finding the subject provisions void, or in determining their validity in the first place.
Mrs. Bryant argues first in her cross-appeal that the trial court erred in finding that the durable power of attorney (POA) gave Mr. Bryant the authority to waive his wife's rights of access to the courts and a jury trial. We disagree. Although the meaning of language is a factual question, interpretation of a document is generally a question of law rather than of fact. Peacock Constr. Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla.1977) (citing § 616, 4 Williston on Contracts, 3d ed.). A trial court's decision on a pure question of law is subject to de novo review. D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003). The trial court found that Mr. Bryant executed the Agreement on October 18, 2002, pursuant to his powers under the POA, specifically citing the following provisions:
L. Compromise, arbitrate, or otherwise adjust claims in favor of or against me or any assets or entity in which I have an interest, and to agree to any rescission or modification of any contract or agreement.
. . .

*269 T. Transact all business, make, execute and acknowledge all contracts, orders, deeds, bills of sale, assurances, promissory notes, mortgages and other instruments of any nature which may be requisite or proper to effectuate any matter or things pertaining to or belonging to me.
(emphasis added).
Neither party cites authority for the blanket proposition that a POA may or may not grant someone the authority to waive the principal's right to a jury trial. "Generally, powers of attorney are strictly construed and will be closely examined in order to ascertain the intent of the principal." De Bueno v. Castro, 543 So.2d 393, 394 (Fla. 4th DCA 1989). Section 709.08(6), Florida Statutes (2006), provides that "[u]nless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in property owned by the principal, including . . . all other contractual or statutory rights or elections. . . ." This statute does not prohibit the attorney in fact from consenting to arbitrate claims on behalf of the principal, absent a provision in the document to the contrary. See § 709.08(7), Fla. Stat. (2006).
When strictly construed, the POA granted Mr. Bryant broad powers on behalf of the principal, Mrs. Bryant. The POA gave Mr. Bryant the authority to arbitrate claims in favor of or against Mrs. Bryant, and to execute and acknowledge all contracts "which may be requisite or proper to effectuate any matter or things pertaining to or belonging to" Mrs. Bryant. It gave Mr. Bryant the power to "take all other actions as may be necessary or appropriate for [Mrs. Bryant's] personal well-being and the management of [Mrs. Bryant's] affairs, as fully and as effectively as if made or done by [Mrs. Bryant] personally." Further, the POA gave Mr. Bryant the authority to execute these powers, notwithstanding the fact that he may be acting individually. Thus, it appears that Mrs. Bryant's intent was to give her husband broad authority to effectuate her legal rights.
In Estate of Schriver v. Schriver, 441 So.2d 1105 (Fla. 5th DCA 1983), the appellate court interpreted a similar broad grant of authority in a durable power of attorney. Id. at 1106-07. The durable power of attorney in Schriver authorized the donor's daughter to "`execut(e) . . . any instrument which may be requisite . . . to effectuate any . . . thing pertaining . . . to me.'" Id. at 1106. The court interpreted these words to be "all-inclusive to allow the donee to do any legal act the donor could do on her own." Id. at 1106-07. In Schriver, this meant the authority to sign documents which secured and protected any legal interest of the donor. Id. at 1107. The POA in the instant case contains a similar broad grant of authority. Accordingly, Mr. Bryant had the authority under the POA to agree to arbitration of any claims arising out of Mrs. Bryant's residency with Alterra.[3]
Mrs. Bryant claims next that the trial court erred in severing the offending clauses because the severed terms go to *270 the essence of the agreement, making the entire agreement unenforceable. Mrs. Bryant relies here on Lacey, where this court found severance inappropriate, under the facts and circumstances of that case, because the invalid provisions went to the essence of the contract. 918 So.2d at 335. However, there was no severance clause in Lacey, which was critical to that determination. Id.
The instant case is analogous to VoiceStream Wireless and Fonte. In VoiceStream Wireless, this court found that despite the presence of unenforceable limitation of liability and waiver of appeal provisions, "where the contract contains a severability clause, their presence does not require a holding that the arbitration agreement is similarly unenforceable." 912 So.2d at 38. Generally, contractual provisions are severable, where the illegal provisions do not go to the contract's essence, and, there remain valid legal obligations with the illegal provisions eliminated. See Fonte, 903 So.2d at 1024 (citing Gold, Vann & White, P.A. v. Friedenstab, 831 So.2d 692 (Fla. 4th DCA 2002)). Severance is appropriate where the void provision can be severed without affecting the intent of the parties to arbitrate. See Fonte, 903 So.2d at 1024 (severing prohibition on award of attorney's fees).
The Agreement contains a severance provision. The severance provision provides, "[s]hould any part of this Agreement be invalid, the validity of the other parts of this Agreement will not be affected." The offending provisions can be severed without affecting the intent of the parties to arbitrate. The Agreement contains seven full pages of arbitration and limitation of liability provisions, which would still afford the parties ample guidelines and opportunity for arbitration, absent the offending provisions. Therefore, the trial court did not err in severing the offending provisions.
Mrs. Bryant's last argument proposes that there is no arbitration provision to enforce regarding Clare Bridge because the Agreement applied only to her stay at Sterling House; and alternatively, because Mr. Bryant never signed a subsequent agreement provided to him after Mrs. Bryant's move to Clare Bridge. We disagree. This court reviews the validity of a contract de novo. Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500, 503 (Fla. 4th DCA 2003). In that de novo review, this court determines whether the trial court's factual findings will sustain its legal conclusion based thereon. Id.
The trial court relied on Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero, 827 So.2d 338 (Fla. 3d DCA 2002), where the appellate court held that "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." Id. at 339. In Lopez-Silvero, a nursing home admitted a resident and cared for him for two months, despite the fact that the nursing home did not sign the admission contract. Id. at 338-39. The parties signed other documents related to nursing home services. Id. The court found that both parties assented to the admission contract because both parties acted as if a valid contract existed. Id.; see also Fenelus, 853 So.2d at 503-04 (finding that nursing home assented to admission agreement, despite not signing the agreement, where both parties performed under the contract for more than three years).
Here, the trial court found that only one admission agreement was signed when Mrs. Bryant was admitted to Sterling House. The Agreement was titled the "Alterra Residency Agreement." The trial court found that Mr. Bryant was fully *271 aware that Mrs. Bryant moved to Clare Bridge. He was given a subsequent admission agreement when Mrs. Bryant entered Clare Bridge, but never signed it. The trial court determined that both parties performed under the terms of the Agreement that was signed by Mr. Bryant. Thus, the trial court's conclusion on the Agreement's applicability to both residences is consistent with its factual findings, which are supported by competent, substantial evidence.
Affirmed.
GUNTHER and MAY, JJ., concur.
NOTES
[1] Effective July 1, 2006, these sections have been renumbered as 429.28 and 429.29.
[2] Hereinafter, "Alterra," "McCauley" and "Schuessler" will be collectively referred to as "Alterra."
[3] Mrs. Bryant claims also that the trial court erred in construing the POA's Health Care Surrogacy Designation as a basis for determining that Mr. Bryant had the authority to waive Mrs. Bryant's right to a jury trial, citing Blankfeld, 902 So.2d at 299-301 (finding that a health care proxy lacked the authority to agree to an arbitration provision waiving the patient's common law remedies and right to trial by jury). However, there is no indication in the trial court's order that the Health Care Surrogacy Designation was a factor in the trial court's decision as to Mr. Bryant's authority. The trial court's decision was based on other provisions of the POA. Thus, we decline to address this argument.