953 So.2d 574 (2007)
ALTERRA HEALTHCARE CORPORATION and Deanne M. Smith as to Alterra Sterling House of Tallahassee, Appellants,
v.
The ESTATE OF Jeanette Kelley LINTON by and through Lorrie Linton GRAHAM f/k/a Lorrie Ann Graham, Personal Representative, Appellee.
No. 1D06-0986.
District Court of Appeal of Florida, First District.
February 28, 2007.
Rehearing Denied April 17, 2007.
*575 Donna J. Fudge, Dennis J. Brennan and Connolly C. McArthur of Buckley & *576 Fudge, P.A., St. Petersburg, for Appellants.
Susan B. Morrison of the Law Offices of Susan B. Morrison, P.A., Tampa; Blair N. Mendes and Bennie Lazarra, Jr., of Wilkes & McHugh, P.A., Tampa, for Appellee.
PER CURIAM.
This appeal arises from an order of the circuit court compelling arbitration in an action against Alterra Healthcare Corporation ("Alterra") and its employee, Deanne Smith, by the Estate of Jeanette Linton for alleged negligence and statutory violations of the Florida Nursing Home Residents Act (Chapter 400, Laws of Florida). The complaint alleged that Linton, an elderly woman who suffered from advanced Alzheimer's disease, died after being beaten and raped while residing at Sterling House of Tallahassee, an assisted living facility owned by Alterra.
The defendants moved to compel arbitration, pursuant to the terms of the residency agreement. The plaintiff argued that the motion should be denied, because Mrs. Linton never signed the residency agreement, and her son, who did sign the agreement, had no authority to do so. Even if the son had authority to sign, the plaintiff maintained that the agreement was unenforceable because it was substantively and procedurally unconscionable. In addition, the plaintiff maintained that the arbitration provision in the residency agreement was void as contrary to public policy, because it included a $250,000 cap on non-economic damages and a total waiver of punitive damages. Finally, the plaintiff asserted that the arbitration provision did not apply to the claim against defendant Deanne Smith, because Smith was not a party to the residency agreement.
Following an evidentiary hearing, the trial court entered an order granting the motion to compel arbitration but specifically ruling that the provisions that limited punitive and compensatory damages were void and unenforceable as against the public policy reflected in the Nursing Home Residents Act. Because the agreement had a severability clause, however, the court ruled that the remainder of the agreement could proceed to arbitration, except as to defendant Smith, because she was not a party to the agreement. It held that any claims against Smith were not subject to arbitration, except to the extent that the plaintiff sought to hold Alterra vicariously liable for Smith's conduct. The court rejected the plaintiff's arguments as to the son's authority to sign the residency agreement on Linton's behalf. It found instead that Linton was an intended third-party beneficiary of the agreement and thus bound by its terms relative to arbitration, and there were no circumstances that would make enforcement of the contract unconscionable. The court stayed the action pending arbitration, and the case is now before us on appeal and cross-appeal.
We reject the defendants's contention that the trial court lacked authority on a motion to compel arbitration to determine the validity of the arbitration clause. The trial court ruled that the exclusion of punitive damages and limit on non-economic damages were void as contrary to public policy, on the basis that chapter 400 is a remedial statute. In so doing, the court did not go beyond the three elements it had authority to consider in ruling on a motion to compel arbitration.[1]See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Rather, its conclusion that the *577 damages limitations were void as against public policy was a determination of the validity of the arbitration agreement under step one of the Seifert analysis.
The defendants' argument to the contrary notwithstanding, Bland v. Health Care & Retirement Corporation of America, 927 So.2d 252 (Fla. 2d DCA 2006) does not support their position. The language from Bland on which the defendants rely is mere dictaa fact the Fourth District pointed out in rejecting this same argument by Alterra recently in a similar case. See Alterra Healthcare Corp. v. Bryant, 937 So.2d 263, 268 (Fla. 4th DCA 2006).
Nor is the U.S. Supreme Court's recent decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) of any aid to the defendants. In Buckeye, the Supreme Court reaffirmed the general rule that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." See Buckeye, 126 S.Ct. at 1210. The defendants here unconvincingly argue that the plaintiff challenged the entire residency agreement, rather than the arbitration agreement alone, based on its mischaracterization of the limitation of liability clause as "outside" the arbitration provision. However, the limitation of liability clause is plainly part of the arbitration provision, as it is expressly incorporated by reference therein. For this reason, Buckeye does not require that the arbitrator rule on the challenge to the arbitration provision.
The trial court had not only the authority, but a duty to determine the validity of the arbitration clause in light of its express limitations of liability. "It is the court's obligation, in deciding a motion to compel arbitration, to determine whether a valid written agreement to arbitrate exists." SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242, 1243 (Fla. 5th DCA 2006). Florida courts have expressly held that arbitration agreements eliminating punitive damages and capping noneconomic damages defeat the remedial purpose of the Nursing Home Residents Act and are therefore void as against public policy. See, e.g., Lacey v. Healthcare & Retirement Corp. of America, 918 So.2d 333, 334 (Fla. 4th DCA 2005); Romano v. Manor Care, Inc., 861 So.2d 59, 61-63 (Fla. 4th DCA 2003), rev. denied, 874 So.2d 1192 (Fla.2004); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 298-99 (Fla. 4th DCA 2005); SA-PG-Ocala, 935 So.2d at 1242.
The defendants maintain that it is for the arbitrator, not the trial court, to decide whether limitations on statutory remedies make an arbitration clause unenforceable. However, the cases on which the defendants rely are distinguishable from the present case. See Beaver Coaches, Inc. v. Revels Nationwide RV Sales, Inc., 543 So.2d 359 (Fla. 1st DCA 1989) (limiting arbitrator's review to limitations of liability that do not pertain to the arbitration clause itself and stating that arbitrator should be bound by parties' specific agreement barring consequential damages, unless arbitrator finds such provision unconscionable); Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86 (Fla. 2d DCA 2005) (holding that trial court, rather than arbitrator, may review a limitation of liability where unconscionability is at issue). Unconscionability is clearly at issue in the present case, and the provision limiting liability, being part of the arbitration provision, pertains to the arbitration provision itself. Therefore, the trial court had authority to determine the enforceability of the remedial limitations.
We likewise reject the defendants' argument that the trial court lacked authority to interpret Chapter 400 in ruling that the remedial limitations of the arbitration provision *578 were invalid. The issue of whether the provision violated public policy goes to the first Seifert inquiry: whether there was a valid agreement to arbitrate. This is a question for the trial court. See, e.g., Lacey, 918 So.2d at 334; Blankfeld, 902 So.2d at 298-99.
Nor did the trial court err in its substantive determination that the remedial limitations in the arbitration agreement were void as against the public policy of the statute. The arbitrability of statutory claims rests on the assumption that the arbitration clause permits relief equivalent to that available via the courts. An arbitration clause is thus unenforceable if its provisions deprive the plaintiff of the ability to obtain meaningful relief for alleged statutory violations. See Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir.1998); see also Romano, 861 So.2d at 61-63.
Like the Nursing Home Residents Act, the Assisted Living Facilities Act is a remedial statute, designed to protect the residents of such facilities. See Bryant, 937 So.2d at 266. The arbitration agreement in the present case defeats the remedial purpose of the Act by eliminating punitive damages and capping noneconomic damages, so the trial court correctly ruled that it was void as against public policy. See Bryant at 266; Lacey, 918 So.2d at 334; Romano, 861 So.2d at 61-63; see also Blankfeld, 902 So.2d at 298-99; SA-PG-Ocala, 935 So.2d at 1242.
The defendants would have us depart from Blankfeld and Lacey, in light of Unicare Health Facilities, Inc. v. Mort, 553 So.2d 159 (Fla.1989). In Mort, the supreme court held that a party may waive her right to attorney fees under chapter 400 by accepting an offer of judgment that is silent as to attorney fees. See Mort, 553 So.2d at 161. However, Mort differed significantly from the case before us, both substantively and procedurally. Moreover, to depart from Blankfeld on this point would require us to ignore post-Mort decisions such as Lacey, Romano and Bryant, which held that similar remedial limitations were void as against public policy.
Although we affirm the trial court on the foregoing points, we reverse its ruling that the arbitration provision did not bind defendant Deanne Smith. Smith was the Residence Director at Sterling House and was not a signatory to the residency agreement. However, the arbitration clause in the agreement nonetheless applied to her.
Where the language of an arbitration provision in a contract between an employer and its customer is broad enough to include persons within the respondent superior doctrine, claims by a client against the defendant company's employees may be subject to arbitration, even though the employee is not a signatory to the contract. See, e.g., Shetty v. Palm Beach Radiation Oncology Associates-Sunderam K. Shetty, MD, PA, 915 So.2d 1233 (Fla. 4th DCA 2005); Qubty v. Nagda, 817 So.2d 952, 958 (Fla. 5th DCA 2002); Simpson v. Cohen, 812 So.2d 588, 590-91 (Fla. 4th DCA 2002); Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Melamed, 453 So.2d 858, 860 (Fla. 4th DCA 1984), decision approved, 476 So.2d 140 (Fla.1985). Alterra could operate Sterling House only through its employees, such as Smith, so the residency agreement applies to non-signatory employees who carried out the duties and obligations of the employer under the contract. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1112 (3d Cir. 1993). The trial court acknowledged in its order that the plaintiff may have a claim against Alterra for Smith's conduct under *579 the respondeat superior doctrine, and the arbitration clause involved here is certainly broad enough to encompass any conduct by Smith alleged in the complaint. Therefore, the trial court erred in refusing to apply the arbitration provision to Smith.
As to the cross-appeal, we reject the plaintiff's argument that there was not a valid agreement to arbitrate that was binding on Mrs. Linton, because she did not sign the agreement. In general, arbitration provisions are personal covenants that bind only the parties thereto. See Regency Isl. Dunes, Inc. v. Foley & Assocs. Contr. Co., Inc., 697 So.2d 217, 218 (Fla. 4th DCA 1997); Karlen v. Gulf & Western Indus., Inc., 336 So.2d 461, 462 (Fla. 3d DCA 1976). But the trial court correctly concluded that Mrs. Linton was an intended third-party beneficiary of the agreement in the present case. A nonsignatory third-party beneficiary is bound by the terms of a contract containing an arbitration clause. See Germann v. Age Inst. of Fla., Inc., 912 So.2d 590, 592 (Fla. 2d DCA 2005); Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So.2d 1089, 1090 (Fla. 4th DCA 2001); Terminix Int'l Co., LP v. Ponzio, 693 So.2d 104, 109 (Fla. 5th DCA 1997); Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 472 So.2d 1324, 1324-25 (Fla. 1st DCA 1985).
We further affirm the severance of the limitation of liability provision so as to enforce the rest of the arbitration provision. Although the plaintiff contends that the Lacey case compels reversal, we cannot accept this argument. Unlike the residency agreement in the instant appeal, the contract in Lacey did not contain a severability clause. It was thus unnecessary for the trial court to resort to the kind of analysis employed in Lacey. Here, the remedial limitations of the contract could be eliminated without impacting the parties' ability to arbitrate the underlying dispute. Therefore, we affirm the trial court's severance of these provisions. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005).
Finally, the trial court did not err in declining to rule that the arbitration agreement was procedurally and substantively unconscionable. Both procedural and substantive unconscionability must be demonstrated in order to establish that a contract is unenforceable as unconscionable. See Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284 (Fla. 1st DCA 2003); Powertel v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999). The plaintiff failed to demonstrate procedural unconscionability, which in turn renders the issue of substantive unconscionability moot. See Weston, 857 So.2d at 288. The trial court therefore did not err in declining to find the arbitration agreement unconscionable.
In sum, we affirm the trial court on all the issues raised on both appeal and cross-appeal, with the sole exception of the ruling that the arbitration clause did not apply to defendant Smith. We therefore reverse as to the refusal to compel arbitration of the claims against Smith, and we affirm as to the remainder of the order.
Affirmed in part, reversed in part, and remanded.
BARFIELD and PADOVANO, JJ., concur.
POLSTON, J., concurring in part and dissents in part with opinion.
POLSTON, J., concurring in part and dissenting in part with opinion.
I agree with the majority's opinion,[1] except I would reverse the trial court's holding *580 that the limitation of remedies provision of the contract is void because it violates Florida's public policy. Although these alleged facts are horrific, and may support a legislative determination that waivers of Chapter 400 remedies should be void, it is the Florida Legislature, rather than the court, who must decide Florida's public policy on this issue.
The residency agreement contained a section limiting liability as follows:
B. LIMITATION OF LIABILITY PROVISION: Read Carefully Before Signing

1. The parties to this Agreement understand that the purpose of this "Limitation of Liability Provision" is to limit, in advance, each party's liability in relation to this Agreement.
2. Liability for any claim brought by a party to this Agreement against the other party, including but not limited to a claim by Alterra for unpaid Basic Service or Personal Service charges, or a claim by a Resident, or by a Resident's Estate, Agent or Legal Representative, arising out of the care or treatment received by the Resident of Alterra, including, without limitation, claims for medical negligence or violation(s) of Florida Statutes §§ 400.428, and 400.429 et seq., arising from simple or gross negligence, shall be limited as follows:
a. Net economic damages shall be awardable, including, but not limited to, past and future medical expenses, offset by any collateral source payments such as payments made by medical insurance.
b. Noneconomic damages, such as pain and suffering, shall be limited to a maximum of $250,000.
c. Interest and/or late fees on unpaid assisted living charges shall not be awarded.
d. Punitive damages shall not be awarded.
Paragraph 13 of the Arbitration Provision of the contract explicitly incorporates this Limitation of Liability Provision into the arbitration agreement, so that the limitations appear both as a stand-alone provision of the contract and as part of the arbitration provision. The contract contains a general severance provision, stating that "[s]hould any part of this Agreement be invalid, the validity of the other parts of this Agreement will not be affected."
I agree with the majority's opinion that the trial court, not the arbitration panel, decides whether the arbitration provision is valid. Accordingly, the trial court properly addressed whether the limitation of liability provision, incorporated by reference into the arbitration agreement, invalidated the arbitration agreement. I disagree with the trial court and majority's ruling that the limitation of liability is invalid.
*581 Generally, contractual waivers are enforceable under Florida law. See Shaw v. Premier Health & Fitness Ctr., Inc., 937 So.2d 1204 (Fla. 1st DCA 2006) (holding that a contractual waiver released health club from liability for its own negligent acts); In re Amendment to the Rules Regulating the Fla. Bar-Rule 4-1.5(f)(4)(B) of the Rules of Prof'l Conduct, 939 So.2d 1032 (Fla.2006) (adopting an amendment to the Rules Regulating the Florida Bar to permit a contractual waiver of the 2004 self-enacting Florida constitutional amendment imposing a specified legal fee structure for contingency fees).
Unlike other statutory remedies, the Florida Legislature has not prohibited a waiver of the remedies provided in Chapter 400. For example, in Florida's Unemployment Compensation Law, the Florida Legislature has specifically prohibited waiver of rights under Chapter 443, and voided any agreement that attempts to waive those rights:
443.041 Waiver of rights; fees; privileged communications. 
(1) WAIVER OF RIGHTS VOID.  Any agreement by an individual to waive, release, or commute her or his rights to benefits or any other rights under this chapter shall be void. Any agreement by an individual in the employ of any person or concern to pay all or any portion of any employer's contributions, required under this chapter from such employer, shall be void. No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's contributions required from her or him, or require or accept any waiver of any right hereunder by any individual in her or his employ. Any employer or officer or agent of an employer who violates any provision of this subsection shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
§ 443.041(1), Fla. Stat. (2002) (emphasis added).
Moreover, the Florida Legislature stated that any waiver of specified provisions of the Motor Vehicle Retail Sales Finance Act "shall be unenforceable and void." § 520.13, Fla. Stat. (2002). Regarding liability of persons engaging in certain hazardous occupations, the legislature stated:
769.06 Contracts limiting liability invalid.  Any contract, contrivance or device whatever, having the effect to relieve or exempt the persons mentioned in s. 769.01 from the liability prescribed by this chapter shall be illegal and void.
§ 769.06, Fla. Stat. (2002).
If waiver of the remedies of Chapter 400 violates public policy, it should be the Florida Legislature to make that decision and specify that such waivers are prohibited and void, rather than the judiciary. See Art. II, § 3, Fla. Const. (recognizing separation of powers); Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 9 (Fla.2004) (ruling that section 400.023 is a legislatively created cause of action to be brought by personal representatives only under certain circumstances, and concluding that the Florida Legislature had the authority to determine the extent of the statutory right and to prescribe or limit the remedies available for a violation of the right).
Had the legislature intended to void contractual provisions waiving remedies under Chapter 400, it could have said so. See Tallahassee Memorial Regional Medical Center v. Kinsey, 655 So.2d 1191, 1198 (Fla. 1st DCA 1995) (stating that "[h]ad the legislature intended that posting of a satisfactory `bond or security' would relieve defendants of all further liability for future economic damages, it would have been an easy matter for it to have said so. In our opinion, the absence of any such language is strong evidence that the legislature did not intend the result urged by *582 appellants. To presume such an intent in these circumstances would amount to the most blatant form of judicial legislation. We decline appellants' invitation to don the legislative mantle."). See also Knowles, 898 So.2d at 7 (noting that although section 400.023(1) provides remedial remedies for nursing home residents, the Court is without power to add words to the statute); Fla. Wildlife Fed'n v. State, Dep't of Envtl. Regulation, 390 So.2d 64, 67 (Fla. 1980) (recognizing that, "[i]f the legislature had meant for the special injury rule to be preserved in the area of environmental protection, it could easily have said so").
Moreover, in Unicare Health Facilities, Inc. v. Mort, 553 So.2d 159, 161 (Fla.1989), the Florida Supreme Court recognized that remedies provided in Chapter 400 may be waived when it ruled that the attorney's fees provision of section 400.023 is "merely a statutory right to seek fees," and that "[c]learly, statutory rights can be waived." See also Bland v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 258 (Fla. 2d DCA 2006) (stating that "a compelling argument can be made that, absent a legislative restriction, the courts should honor a party's decision to contract away statutory protections. See § 400.151(2) (stating that nursing home contract shall include `any other matters which the parties deem appropriate')").
Therefore, I would affirm the trial court on all the issues raised on both appeal and cross-appeal, with the exceptions of the rulings that (i) the arbitration clause did not apply to defendant Smith,[2] and (ii) the arbitration should not include the limitations of liability.
NOTES
[1] In ruling on a motion to compel arbitration, a trial court must consider (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Seifert, 750 So.2d at 636.
[1] The majority properly analyzed the case under the Florida Arbitration Code rather than the Federal Arbitration Act. The arbitration provision in the contract states that "[e]xcept as expressly set forth herein, the provisions of the Florida Arbitration Code Florida Statutes §§ 682.01, et seq., shall govern the arbitration." See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (holding that the Federal Arbitration Act did not preempt California law where the parties contractually agreed to abide by state rules of arbitration; "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.").
[2] I agree with the majority that the claims against Ms. Smith should be arbitrated because the standards for a non-signatory agent to compel arbitration described in Koechli v. BIP Int'l, Inc., 870 So.2d 940, 944 (Fla. 1st DCA 2004) are satisfied in the case.