PERRY, J.
Angela I. Gessa seeks review of the decision of the Second District Court of Appeal in Gessa v. Manor Care of Florida, Inc., 4 So.3d 679 (Fla. 2d DCA 2009), on the ground that it expressly and directly conflicts with a decision of another Florida district court of appeal on a question of law.[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
I. BACKGROUND
Angela Gessa was admitted as a resident to Manor Care of Florida, Inc., a nursing home. Upon admission, her daughter, acting as her attorney-in-fact, signed admissions documents that included an arbitration agreement. During her stay, Gessa filed suit against Manor Care, alleging negligence, violation of resident’s rights, and breach of fiduciary duty. Manor Care moved to compel arbitration. At the hearing on the motion, Gessa argued that the arbitration agreement was unconscionable and contrary to public policy due to the limitation of liability provisions in the agreement that capped noneconomic damages at $250,000 and waived punitive damages. The trial court, however, granted *486 the motion to compel, ruling that, because any offensive clauses can be severed, the agreement was not unconscionable. The court declined to rule on the public policy issue, leaving it for the arbitrator. Gessa appealed, arguing that the limitation of liability provisions violated public policy and were not severable. The district court affirmed, agreeing with the trial court that the provisions were severable. Also, the district court did not rule on the public policy issue, leaving it for the arbitrator. Gessa sought discretionary review, which we granted.
Gessa raises several issues, including the following: (i) whether the limitation of liability provisions are severable, (ii) whether the court or the arbitrator must decide whether the arbitration agreement violates public policy, and (iii) whether the limitation of liability provisions violate public policy. Manor Care, in counterpoint, contends that the United States Supreme Court’s recent decision in Rent-A-Center, West, Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), is applicable here and entitles Manor Care to relief on its motion to compel.
As explained more fully below, our decision in this case is controlled in part by our recent decision in Shotts v. OP Winter Haven, Inc., 86 So.3d 456 (Fla.2011), another nursing home arbitration case. Pursuant to our reasoning in that case, we hold that the district court below erred in the following respects: (i) in ruling that the limitation of liability provisions in this case, which place a $250,000 cap on non-economic damages and waive punitive damages, are severable; (ii) in failing to rule that the court, not the arbitrator, must decide whether the arbitration agreement violates public policy; and (iii) in failing to rule that the above limitation of liability provisions violate public policy. As in Shotts, we also conclude that the United States Supreme Court’s decision in Jackson is inapplicable here.
A. Facts and Procedural History
The relevant facts of this case are set forth in the district court decision under review:
Angela I. Gessa, by and through Miriam G. Falatek, her attorney-in-fact, challenges the trial court’s order granting Manor Care of Florida, Inc.’s motion to compel arbitration in Gessa’s action against Manor Care for negligence, violation of resident’s rights, and breach of fiduciary duty....
Gessa was admitted as a resident of Manor Care of Carrollwood on two occasions. Upon each admission, she or Fa-latek signed admissions documents that included an arbitration agreement. One document, entitled “Admission Agreement,” was a nine-page document to which Attachments A through I were appended. In addition, a form entitled “Attestation of Admission Agreement and Attachment” was executed. However, the crux of this appeal centers on the form that bears no specific title but is captioned with the following warning: “THIS AGREEMENT CONTAINS A WAIVER OF STATUTORY RIGHTS. PLEASE READ CAREFULLY.” This document was not designated as an attachment to the Admissions Agreement, nor does the attestation form include any reference to it.
The document is composed of two sections: A. Arbitration Provisions and B. Limitation of Liability Provision[s]. The last paragraph of section A reads: “The Limitation of Liability Provision[s] below [are] incorporated by reference into this Arbitration Agreement.” At the time of Gessa’s first admission, this document was signed by a representative of Manor Care and by Gessa. Falatek and *487 a Manor Care representative signed it upon Gessa’s return to the facility.
During her second stay, Gessa filed suit against Manor Care under chapter 400, Florida Statutes (2004), the Nursing Home Residents Act (the Act). In her complaint, Gessa sought damages for the improper treatment she received at the facility. In response to the complaint, Manor Care moved to compel arbitration pursuant to the parties’ arbitration agreement. Gessa filed her memorandum in opposition to the motion, arguing that the arbitration agreement was both substantively and procedurally unconscionable. Additionally, Gessa argued that the arbitration agreement was unenforceable because it was contrary to public policy. These arguments were premised on the terms of the limitation of liability provision[s] contained in section B of the document that the parties signed during the admissions process. [These provisions] prohibited the award of punitive damages and capped any award of noneconomic damages at $250,000. Gessa argued that these limitations were contrary to the rights specifically granted by the Act, and that they invalidated the entire agreement to arbitrate. Gessa repeated these arguments at the hearing held on the motion to compel arbitration.
Gessa, 4 So.3d at 680 (citation omitted).
The trial court, in its written order, granted the motion to compel, concluding that the agreement was severable and was not unconscionable:
This cause came before the Court on March 1, 2007, concerning the Defendant’s Motion to Stay Proceedings and to Compel Arbitration. The Court, having reviewed the memoranda, considered the arguments presented, and being otherwise fully advised, grants the Defendant’s Motion to Stay Proceedings and Compel Arbitration. The Court finds no procedural unconscionability, as there was a three day right of rescission contained in the arbitration agreement. Further, the agreement was not substantively unconscionable because offensive clauses can be severed, as they are not integral to the contract and are separate from the arbitration provision.
(Emphasis added.) The court declined to rule on the public policy issue, leaving it for the arbitrator.
Gessa appealed, arguing that the limitation of liability provisions violated public policy and were not severable. The district court affirmed, agreeing with the trial court that the provisions were severable. Also, the district court declined to rule on the public policy issue, leaving it for the arbitrator:
Here, the trial court reviewed the document that contained the arbitration agreement and limitation provision[s] and determined that the limitation [provisions were] not an integral part of the parties’ agreement to settle claims by arbitration. This factual finding is supported by competent evidence. Based on the test defined in Local No. 234 [v. Henley & Beckwith, Inc., 66 So.2d 818, 821-22 (Fla.1953)], we agree with the trial court that the limitation provision[s] [are] severable, even though the contract lacks a specific severability clause. Although the inclusion of such ... provision^] would expressly demonstrate the intent of the parties, pursuant to Local No. 234, the trial court is not bound by the inclusion or omission of such a clause when determining the issue of severability. Accordingly, the trial court, having found the limitations provision[s] here to be severable, properly directed that the case proceed to arbitration.
*488 Gessa, 4 So.3d at 682. Gessa sought discretionary review, which we granted. Gessa raises several claims,[2] and we address three of them.[3]
B. Arbitration Agreement
The arbitration agreement that Gessa’s daughter signed when Gessa was admitted to Manor Care bore no title. Instead, the document bore the following heading: “THIS AGREEMENT CONTAINS A WAIVER OF STATUTORY RIGHTS. PLEASE READ CAREFULLY.” The document was divided into four parts: A, B, C and D. Part A was titled “ARBITRATION PROVISIONS” and was approximately three and one-half pages long. The following provisions were included at various points in Part A:
—Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statutes §§ 682.01, et seq., shall govern the arbitration.
—Discovery in the arbitration proceeding shall be governed by the Florida Rules of Civil Procedure [except as otherwise provided herein].
—[T]he only depositions allowed shall be of experts and any treating physicians. No other individuals may be deposed.
—The arbitrator shall apply the Florida Rules of Evidence and Florida Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration award shall be consistent with, Florida law except as otherwise stated in this Agreement.
—The arbitrator’s fees and costs associated with the arbitration shall be paid by the Facility....
—The parties shall bear their own attorney’s fees and costs and hereby expressly waive any statutory right to recover attorney fees or costs....
—The parties agree to maintain the confidentiality of the arbitration proceeding in all respects....
Significantly, at the conclusion of Part A, just before the beginning of Part B, the document provided:

—The Limitation of Liability Provision[s] below [are] incorporated by reference into this Arbitration Agreement.

(Emphasis added.)
Part B of the document, which was approximately one-half page in length, was titled “LIMITATION OF LIABILITY PROVISION[S]: Read Carefully Before Signing,” and it contained four provisions, one of which placed a $250,000 cap on noneconomic damages, and another of which called for a waiver of punitive damages. Part B provided as follows in full:
1.1 The parties to this Agreement understand that the purpose of [these] “Limitation of Liability Provision[s]” is *489 to limit, in advance, each party’s liability in relation to this Agreement.
1.2 Liability for any claim brought by a party to this Agreement against the other party, including but not limited to a claim by the Facility for unpaid nursing home charges, or a claim by a Resident, arising out of the care or treatment received by the Resident at the Facility, including, without limitation, claims for medical negligence or violation(s) of Florida Statutes §§ 400.022, et seq., arising from simple or gross negligence, shall be limited as follows:
1. Net economic damages shall be awardable, including, but not limited to, past and future medical expenses, off-set by any collateral source payments; any outstanding liens shall be satisfied from the damages awarded.
2. Non-economic damages shall be limited to a maximum of $250,000.
3. Interest on unpaid nursing home charges shall not be awarded.
4. Punitive damages shall not be awarded.
The parties hereto each acknowledge that these limitations of liability are fair and reasonable under the circumstances.
(Emphasis added.) Part C of the document, which was a brief paragraph, was titled “WITHDRAWAL PERIOD,” and it provided that each party shall have three business days in which to cancel the agreement. And Part D, which was also a brief paragraph, was titled “FULL AGREEMENT,” and it stated that the agreement constitutes the entire agreement between the parties.
II. ANALYSIS
As noted above, this case is controlled in part by our decision in Shotts v. OP Winter Haven, Inc., 86 So.3d 456 (Fla.2011), and although the two cases are similar, they differ in several respects. First, whereas the limitation of liability provisions in the present case include a $250,000 cap on noneconomic damages and a waiver of punitive damages, the limitations of remedies provisions in Shotts included the imposition of the AHLA rules[4] and a waiver of punitive damages. And second, whereas the present arbitration agreement contains no severability clause, the agreement in Shotts contained such a clause.
A. Severability
In this claim, Gessa contends that the district court erred in ruling that the limitation of liability provisions in the present case are severable. To the extent this claim is based on written materials before this Court, the issue is a pure question of law, subject to de novo review. See Aills v. Boemi, 29 So.3d 1105, 1108 (Fla.2010) (“Because this is a question of law ... the standard of review is de novo.”). In its opinion, the district court below indicated that it agreed with the trial court’s ruling that “offensive clauses can be severed.” Gessa contends, however, that the district court erred in this respect — she contends that the limitation of liability provisions violate public policy and are not severable. We agree.
This Court addressed a similar scenario in Shotts, where we held that one of the limitations of remedies provisions in that case — the provision called for the imposition of the AHLA rules — was not severa-ble. Because it was unnecessary to do so, we did not address whether the second provision in that case — a waiver of punitive *490 damages — was severable. There, we noted that we had established a general standard for determining whether a contractual provision is severable from the whole, and that standard provides in part: “[A] bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other.” Local No. 234 v. Henley & Beckwith, Inc., 66 So.2d 818, 821-22 (Fla.1953) quoted in Shotts, 86 So.3d at 475.
In Shotts, we then reviewed the deci-sional law in this area and applied the above standard from Local No. 23b to the limitations of remedies provision in Shotts. We ruled as follows:
Based on the foregoing, we conclude that the limitations of remedies provision in the present case that calls for the imposition of the AHLA rules is not severable from the remainder of the agreement. Although the arbitration agreement in this case contains a sever-ability clause, the AHLA provision goes to the very essence of the agreement. If the provision were to be severed, the trial court would be forced to rewrite the agreement and to add an entirely new set of procedural rules and burdens and standards, a job that the trial court is not tasked to do. See Local No. 234, 66 So.2d at 821-22.
Further, if the AHLA provision were severed, the trial court would be hard pressed to conclude with reasonable certainty that, with the illegal provision gone, “there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other” id. — particularly, when those legal promises are viewed through the eyes of the contracting parties. See generally id. at 822.... We note that the trial court below ruled that the limitations of remedies provisions in the present case are not severable — and we agree with that assessment. Under the above standard of review, we hold that the district court below erred in ruling that the AHLA provision in this case is severable.
Shotts, 86 So.3d at 478.
As in Shotts, we conclude that the limitation of liability provisions in the present case, which place a $250,000 cap on non-economic damages and waive punitive damages, are not severable from the remainder of the agreement. As noted above, the limitation of liability provisions are contained in Part B of the arbitration agreement, which is titled “LIMITATION OF LIABILITY PROVISION^],” and the first section in part B provides as follows: “The parties to this Agreement understand that the purpose of [these] ‘Limitation of Liability Provision[s]’ is to limit, in advance, each party’s liability in relation to this Agreement.” When viewed jointly, the above two provisions place a clear upper limit on noneconomic damages and foreclose the prospect of punitive damages altogether. The extent of liability under the agreement is thus, within bounds, reasonably foreseeable. Without these provisions, on the other hand, the extent of liability would be open-ended. In this respect, the two provisions constitute the financial heart of the agreement.
As in Shotts, we conclude that if the present provisions were to be severed, “the trial court would be hard pressed to conclude with reasonable certainty that, with the illegal provision[s] gone, ‘there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other’ id. — particularly, when those legal promises are viewed through the eyes of *491 the contracting parties.” Shotts, 86 So.3d at 459 (quoting Local No. 234, 66 So.2d at 821-22). Thus, contrary to the ruling below, these limitation of liability provisions, which place a $250,000 cap on noneconomic damages and waive punitive damages, are not severable from the arbitration agreement. This conclusion is consistent with the weight of authority in Florida.[5]
Under the above standard of review, we hold that the district court below erred in ruling that the limitation of liability provisions in this case are severable.
B. Court or Arbitrator
In this claim, Gessa contends that the district court erred in affirming the trial court’s order which, in effect, allowed the arbitrator, not the court, to decide whether the arbitration agreement violates public policy. This issue is a pure question of law, subject to de novo review. See Aills v. Boemi, 29 So.3d 1105, 1108 (Fla.2010). We agree with Gessa.
This issue has already been decided in Gessa’s favor in Shotts. There, we held that the court, not the arbitrator, must decide whether an arbitration agreement violates public policy:
[Tjhis Court in Seifert [v. U.S. Home Corp., 750 So.2d 633 (Fla.1999),] held that it was for the court, not the arbitrator, to determine “whether a valid written agreement to arbitrate exists,” Seifert, 750 So.2d at 636 (emphasis added), and we later explained the meaning of the term “valid” in this context, with respect to arbitration and public policy: “No valid agreement exists if the arbitration clause is unenforceable on public policy grounds.” Global Travel [Marketing, Inc. v. Shea, 908 So.2d 392, 398 (Fla.2005)]. Thus, under Siefert [Seifert] and Global Travel, it is incumbent on the court, not the arbitrator, to determine whether an arbitration agreement violates public policy.
Shotts, 86 So.3d at 471. Again, this conclusion is consistent with the weight of authority in Florida,[6] and even the district *492 court below — the Second District Court of Appeal — now concedes this.[7]
Under the above standard of review, we hold that the district court below erred in failing to rule that the court, not the arbitrator, must decide whether the arbitration agreement violates public policy-
C. Limitation of Liability Provisions
In this claim, Gessa contends that the district court erred in failing to rule that the limitation of liability provisions in the present case violate public policy. This issue is a pure question of law, subject to de novo review. See Aills v. Boemi, 29 So.3d 1105, 1108 (Fla.2010). As noted above, the limitation of liability provisions in this case call for a $250,000 cap on noneconomic damages and a waiver of punitive damages. The district court below did not decide whether these provisions violate public policy, but rather left the matter to the arbitrator. Gessa contends that the district court erred in this respect — she contends that the provisions violate public policy, and that the district court should have so ruled. We agree.
As noted above, this Court addressed a similar scenario in Shotts, where the limitations of remedies provisions included the imposition of the AHLA rules and a waiver of punitive damages. There, we ruled as follows:
Based on the foregoing, we conclude that the limitations of remedies provisions in the present case violate public policy, for they directly undermine specific statutory remedies created by the Legislature. See §§ 400.022, 400.023, Fla. Stat. (2003). This conclusion comports with the vast weight of authority in Florida, as discussed above. The Fourth District Court of Appeal in Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003), explained succinctly:
Sections 400.022 and 400.023 are remedial statutes, designed to protect nursing home residents. The Nursing Home Resident’s Rights Act, section 400.022, was originally enacted after a Dade County Grand Jury investigation of nursing homes revealed substantial elder abuse occurring in many nursing homes without any remedial action being taken. The law set up rights of residents, including the right to appropriate medical care, and requires nursing homes to make public statements of the rights and responsibilities of the residents. To enforce these rights, the legislature provided each resident with a cause of action for their violation.... The legislature also provided for the award of punitive damages for gross or flagrant conduct or conscious indifference to the rights of the resident. *493 Moreover, there was no cap on pain and suffering damages in the statute.
Romano, 861 So.2d at 63 (emphasis added) (citations omitted).
In light of the recognized need for these remedies and the salutary purpose they serve, we conclude that any arbitration agreement that substantially diminishes or circumvents these remedies stands in violation of the public policy of the State of Florida and is unenforceable.
Shotts, 86 So.3d at 474 (first emphasis in original) (second emphasis added).
As in Shotts, we conclude that the limitation of liability provisions in the present case violate public policy. As noted above, the nursing home statute provides for the award of “punitive damages for gross or flagrant conduct or conscious indifference to the rights of the resident. Moreover, there was no cap on pain and suffering damages in the statute.” In contrast, the limitation of liability provisions in the present case eliminate punitive damages altogether and severely restrict damages for pain and suffering. These provisions directly frustrate the remedies created by the statute. The provisions eviscerate the remedial purpose of the statute, or, in the language of Shotts, they “substantially diminish[ ] or circumvent[ ] these remedies.” Shotts, 86 So.3d at 474. Thus, these limitation of liability provisions, which place a $250,000 cap on noneconomic damages and waive punitive damages, violate the public policy of the State of Florida and are unenforceable. Again, this conclusion is consonant with the weight of authority in Florida.[8]
Under the above standard of review, we hold that the district court below erred in failing to rule that the limitation of liability provisions in the present case violate public policy.
D. Rent-A-Center v. Jackson
Approximately two weeks after this Court heard oral argument in the present case, the United States Supreme Court issued its decision in Rent-A-Center, West, Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), in which that Court addressed the issue of whether the court or the arbitrator must determine whether an arbitration agreement is unconscionable (Jackson contended that the agreement was unconscionable under Nevada law because it required the splitting *494 of arbitration fees) where the agreement contained a provision, known as a delegation provision, in which the parties specifically agreed to arbitrate the enforceability of the arbitration agreement. The United States Supreme Court held that, where there has been no specific challenge to the delegation provision, the arbitrator, not the court, must decide the issue.
After Jackson was decided, Manor Care filed in this Court a motion to submit supplemental briefing addressing whether Jackson is applicable to the present case. This Court granted the motion and ordered the parties to submit supplemental briefs on an expedited schedule. In its supplemental brief, Manor Care contends that under Jackson the present case must proceed to arbitration because Gessa did not challenge the agreement to arbitrate but rather challenged the limitation of liability provisions, which are separate from that agreement. We disagree.
In Jackson, after Antonio Jackson filed an employment discrimination claim against Rent-A-Center, West, Inc., which was his former employer, Rent-A-Center filed a motion to compel arbitration pursuant to the Mutual Agreement to Arbitrate Claims that Jackson had signed as a condition of his employment. The agreement contained a delegation provision in which the parties agreed to arbitrate the enforceability of the agreement. Jackson did not challenge the delegation provision specifically; rather, he opposed the motion on the ground that the entire arbitration agreement was unconscionable. The federal district court granted the motion, and the circuit court of appeals reversed. The United States Supreme Court granted cer-tiorari and reversed, ruling that the delegation provision was controlling and should have been challenged.
In the present case, because the arbitration agreement contained no delegation provision, there was no such provision for Gessa to challenge. Instead, she challenged the arbitration agreement itself and this included the limitation of liabilities provisions, which had been incorporated by reference into the agreement. This was the proper course of action under section 2 of the Federal Arbitration Act, for unlike the situation in Jackson, the entire arbitration agreement in the present case operated as the “written provision ... to settle by arbitration a controversy,” under section 2. See 9 U.S.C. § 2 (2006). Specifically, because the agreement contained no delegation provision, Jackson is inapplicable here.
III. CONCLUSION
Based on the foregoing, we conclude that the district court in the present case erred in the following respects: (i) in ruling that the limitation of liability provisions, which place a $250,000 cap on non-economic damages and waive punitive damages, are severable; (ii) in failing to rule that the court, not the arbitrator, must decide whether the arbitration agreement violates public policy; (iii) in failing to rule that the above limitation of liability provisions violate public policy. We also conclude that the United States Supreme Court’s decision in Rent-A-Center, West, Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), is inapplicable here.
We quash the decision of the district court in Gessa v. Manor Care of Florida, Inc., 4 So.3d 679 (Fla. 2d DCA 2009).
It is so ordered.
PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., concurs.

. See infra notes 5-8.

. Gessa raises the following claims: (a) the public policy issue is a gateway issue, and it must be addressed by the court, not the arbitrator; (b) the present district court decision conflicts with decisions from the other district courts, which have uniformly refused to enforce limitations of remedies provisions in nursing home and assisted living facility arbitration agreements because they defeat the remedial purposes of chapter 400, Florida Statutes; (c) the present district court decision conflicts with decisions of this Court and other district courts on the issue of whether the offending limitations provisions are sever-able; and (d) the present district court decision conflicts with decisions of this Court and other district courts on the issue of whether an arbitration agreement that contains unenforceable terms that violate public policy renders the entire agreement void.

. We address, in the following order, claims (c), (a), and (b). We decline to address the other claim raised by Gessa.

. American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration.

. For instance, the First District Court of Appeal has held that a limitations of remedies provision is severable but only where the agreement itself contained a severability clause. See Alterra Healthcare Corp. v. Estate of Linton, 953 So.2d 574 (Fla. 1st DCA 2007) (finding severability where agreement had a severability clause, capped noneconomic damages at $250,000, and precluded punitive damages). The Fourth District Court of Appeal has held that a limitations of remedies provision is not severable, regardless of whether the agreement did or did not contain a severability clause. See Place at Vero Beach, Inc. v. Hanson, 953 So.2d 773 (Fla. 4th DCA 2007) (rejecting severability where agreement had a severability clause and a provision adopting AHLA rules); Lacey v. Healthcare & Retirement Corp. of Am., 918 So.2d 333 (Fla. 4th DCA 2005) (rejecting severability where agreement capped noneconomic damages at $250,000, precluded punitive damages, and had no severability clause). And the Fifth District Court of Appeal has held that such a provision is not severable, regardless of whether the agreement contained a severability clause or not. See Fletcher v. Huntington Place Ltd. P’ship, 952 So.2d 1225 (Fla. 5th DCA 2007) (rejecting severability where contract capped noneconomic damages at $250,000, precluded punitive damages, and had a severability clause); SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242 (Fla. 5th DCA 2006) (rejecting severability where agreement contained provisions that capped noneconomic damages at $250,000 and precluded punitive damages, and had no severability clause).

. See, e.g., Hanson, 953 So.2d 773 (affirming the trial court’s ruling that the arbitration agreement conflicted with the Florida Nursing Home Residents Act and was unenforceable); Fletcher, 952 So.2d 1225 (reversing the trial court’s ruling compelling arbitration and instead holding that a limitations of remedies provision in a nursing home contract violates public policy and is void); Linton, 953 So.2d at 578 ("The issue of whether the provision violated public policy goes to the first Seifert inquiry: whether there was a valid agreement to arbitrate. This is a question for the trial *492 court."): Alterra Healthcare Corp. v. Bryant, 937 So.2d 263, 267 (Fla. 4th DCA 2006) ("[T]he trial court properly considered whether the arbitration and limitation of liability provisions were valid.”); Stokes, 935 So.2d at 1243 ("It is the court's obligation, in deciding a motion to compel arbitration, to determine whether a valid written agreement to arbitrate exists."); Lacey, 918 So.2d 333 (reversing the trial court's ruling compelling arbitration and instead holding that a limitations of remedies provision in a nursing home contract violates public policy and is void); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA 2005) (same).

. See Jaylene, Inc. v. Steuer, 22 So.3d 711, 713 (Fla. 2d DCA 2009) ("We note that we are in conflict with decisions by the First, Fourth, and Fifth Districts holding that the trial court initially must determine whether an arbitration agreement’s limitation on statutory remedies renders the agreement unenforceable on public policy grounds.”).

. See, e.g., Linton, 953 So.2d at 578 ("The arbitration agreement in the present case defeats the remedial purpose of the Act by eliminating punitive damages and capping noneco-nomic damages, so the trial court correctly ruled that it was void as against public policy."); Bryant, 937 So.2d at 266 ("This court has held repeatedly that arbitration agreements eliminating punitive damages and capping non-economic damages defeat the remedial purpose of the NHRA and are, therefore, void as against public policy."); Stokes, 935 So.2d at 1243 ("It would be against public policy to permit a nursing home to dismantle the protections afforded patients by the Legislature through the use of an arbitration agreement.”); Lacey, 918 So.2d at 334 ("To the extent that a contractual limitation defeats the purpose of a remedial statute, the limitation may be found void as a matter of law.... [The arbitration agreement here] eliminates punitive damages, which are expressly provided for in the Act. It also caps non-economic damages at $250,000, which would seem to substantially affect the compensatory damage remedy. These provisions are thus void under the public policy rationale utilized in this district.”); Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th DCA 2003) ("Although parties may agree to arbitrate statutory claims, even ones involving important social policies, arbitration must provide the prospective litigant with an effective way to vindicate his or her statutory cause of action in the arbitral forum. When an arbitration agreement contains provisions which defeat the remedial provisions of the statute, the agreement is not enforceable.”) (citations omitted).