GROSS, J.
The Estate of Frances Deresh timely appeals a non-final order compelling it to arbitrate its claims against the various defendants in this wrongful death action. *298 We affirm the order compelling arbitration but remand to the circuit court with instructions to sever the punitive damages limitation from the arbitration agreement.
The estate sued various defendants involved with a nursing home facility. The estate made the following claims: (1) nonlethal negligence, in that Deresh was the victim of a sexual assault, developed skin problems (rash and ulcer), and fell in her bathroom; (2) lethal negligence, in that the non-lethal negligence ultimately caused Deresh’s death; (3) wrongful death, a claim pursued on behalf of Deresh’s surviving children; (4) breach of fiduciary duty; (5) the corporate defendants’ violations of section 415.1111, Florida Statutes (2008), exploitation of a -vulnerable adult; and (6) the individual defendants’ violations of the same statute.
Around the time Deresh was admitted to the facility, she and the facility entered into an arbitration agreement. The agreement required the arbitration of certain claims:
1. AGREEMENT TO ARBITRATE. Should a dispute arise between the Parties, they desire to avoid costly and time-consuming litigation. Resident and Five Star agree that any claims, controversies, or disputes arising between them involving a potential monetary amount in excess of $25,000 shall be resolved exclusively by binding arbitration.
The arbitration was to be conducted by either one or three arbitrators, the number to be selected by Deresh; the members “shall be chosen by the American Arbitration Association (‘AAA’) or by mutual agreement between the parties”; and the panel “shall follow the current Commercial Arbitration Rules of the AAA.”
On remedies, the agreement provided: The Panel shall have the authority to grant equitable relief that could be ordered by a court. The Panel shall have authority to award economic damages and non-economic damages (including, damages for pain and suffering and mental anguish); but shall have no authority to award punitive or exemplary damages.
Finally, the arbitration agreement contained an express severability clause.
7. SEVERABILITY. If any provision of this Agreement is declared to be unlawful, invalid or unenforceable for any reason, then notwithstanding such unlawfulness, invalidity or unenforceability, the remaining terms and provisions of this Agreement shall remain in full force and effect.
The defendants moved to compel arbitration. After a hearing, the circuit court compelled arbitration and stayed the proceedings.
The estate first argues that the circuit court erred because the defendants “made no effort whatsoever to meet its burden of establishing that” the case involved “a potential monetary amount in excess of $25,000.” The estate did not notify the court that it was seeking less than $25,000 in damages. “Potential” means “1. Possible, as opposed to actual ... 2. capable of being or becoming.” The Random House Dictionary of the English Language 1125 (1967). The nature and quantity of the estate’s causes of action involve the “potential” of damages in excess of $25,000 anywhere on this planet that recognizes similar claims. Because the claims in this case fell within the scope of disputes subject to the arbitration agreement, the trial court did not err in granting the defendants’ motion to compel arbitration.
The estate next contends that two recent decisions of the Florida Supreme *299 Court (1) compel the conclusion that the arbitration agreement’s limitation on punitive damages is contrary to public policy and (2) require invalidation of the entire arbitration agreement. See Shotts v. OP Winter Haven, Inc., 86 So.3d 456 (Fla.2011); Gessa v. Manor Care of Fla., Inc., 86 So.3d 484 (Fla.2011). While we agree with the first part of that argument, we conclude that the punitive damages limitation is severable from the rest of the arbitration agreement.
We review a trial court’s order compelling arbitration de novo. See Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999). “[TJhere are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived.” Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). The effect of the punitive damages limitation involves the first element — whether the parties’ arbitration agreement is valid.
Neither Shotts nor Gessa compels the conclusion that the punitive damages limitation cannot be severed from the arbitration agreement.
In Shotts, the estate of a nursing home resident sued the home alleging negligence and breach of fiduciary duties. 86 So.3d at 460. The home moved to compel arbitration based on an agreement the resident had signed upon admission. Id. at 458. The Supreme Court described the pertinent provisions of the agreement: “The agreement contained the following ‘limitations of remedies’ provisions: (i) the arbitration will be conducted in accordance with the American Health Lawyers Association (AHLA) rules; and (ii) the arbitrators will have no authority to award punitive damages. The agreement also stated that its terms were severable.” Id. The trial court granted the motion to compel arbitration. Id. The district court affirmed, and the Supreme Court granted discretionary review. Id.
There were three issues in the Supreme Court, two of which are relevant here: “(2) whether the limitations of remedies provisions violate public policy; and (3) whether the limitations of remedies provisions are severable.” Id.
On the first of these issues, the Supreme Court held that the limitation-of-remedies provisions violated public policy. Id. at 471-75. The Court reasoned that the limitation-of-remedies provisions “directly un-derminted] specific statutory remedies created by the Legislature,” sections 400.022 and 400.023, Florida Statutes (2003), which were designed to provide nursing home residents with remedies against abuse at the hands of their nursing homes. Id. at 474. The resident’s bill of rights articulated in section 400.022 was backed up by the remedies, including punitive damages, in section 400.023. See § 400.023(1) (“The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any violation of the rights of a resident or for negligence.”).
Having determined that the two limitation-of-remedies provisions were invalid, the Supreme Court next addressed whether they were severable from the rest of the arbitration agreement. Shotts, 86 So.3d at 475-78. Without discussing the limitation on punitive damages, the Supreme Court’s analysis focused solely on the AHLA-rules provision, which provided that the arbitrator could not award “consequential, exemplary, incidental, punitive or special damages” unless the arbitrator determined that there was “clear and convincing evidence” “of conduct evincing an intentional *300 or reckless disregard for the rights of another party, or fraud, actual or presumed.” Id. at 476-77. This provision was contrary to section 400.023(2), which called for only a preponderance of the evidence standard. Id. See also Place at Vero Beach, Inc. v. Hanson, 953 So.2d 773, 775 (Fla. 4th DCA 2007). The Court held that even though the arbitration agreement contained a severability clause, the AHLA rules provision was not severable from the remainder of the agreement because it went “to the very essence of the agreement.” Shotts, 86 So.3d at 478. The Court adopted this “general standard for determining whether a contractual provision is severable from the whole” contract:
[A] bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other.
Gessa, 86 So.3d at 490 (quoting Shotts, 86 So.3d at 475) (quoting Local No. 234 of United Ass’n of Journeymen v. Henley & Beckwith, Inc., 66 So.2d 818, 821-22 (Fla.1953)).
The Court explained that
[i]f the provision were to be severed, the trial court would be forced to rewrite the agreement and to add an entirely new set of procedural rules and burdens and standards, a job that the trial court is not tasked to do.
Further, if the AHLA provision were severed, the trial court would be hard pressed to conclude with reasonable certainty that, with the illegal provision gone, “there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other,” id. — particularly, when those legal promises are viewed through the eyes of the contracting parties.
Id. Part of the Court’s severability analysis is the notion that the parties would not have entered into a contract that did not contain the provision sought to be severed, a provision that went “to the very essence of the agreement.” Id. The Supreme Court did not discuss whether, if viewed alone, the prohibition on punitive damages in the arbitration was severable from the rest of the arbitration agreement.[1]
In Gessa, the Supreme Court confronted a nursing home arbitration agreement that placed a $250,000 cap on noneconomic damages and waived punitive damages altogether. 86 So.3d at 485. The arbitration agreement did not contain a severability clause. Id. at 489. The Supreme Court held that the two limitation-of-liability provisions, violated public policy and were unenforceable because they “directly undermine[d] specific statutory remedies created by the Legislature.” Id. at 490, 492-93. On severability, the Court ruled that, “when viewed jointly,” the two “limitation of liability provisions” were “not severable from the remainder of the agreement.” Id. at 490. The Court reasoned that the two provisions went to the essence of the arbitration agreement:
When viewed jointly, the above two provisions place a clear upper limit on non-economic damages and foreclose the prospect of punitive damages altogether. The extent of liability under the agreement is thus, within bounds, reasonably foreseeable. Without these provisions, *301 on the other hand, the extent of liability would be open-ended. In this respect, the two provisions constitute the financial heart of the agreement.
As in Shotts, we conclude that if the present provisions were to be severed, “the trial court would be hard pressed to conclude with reasonable certainty that, with the illegal provisions] gone, ‘thefe still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other’ id. — particularly, when those legal promises are viewed through the eyes of the contracting parties.” Shotts, 86 So.3d at 459 (quoting Local No. 234, 66 So.2d at 821-22).
Id. at 490-91.
Shotts and Gessa compel the holding that the provision in the arbitration agreement preventing the arbitration panel from awarding punitive damages violated public policy. This case involves Chapter 415 rather than Chapter 400, which was at issue in Shotts and Gessa; however, like the statute in those cases, section 415.1111, Florida Statutes (2008) expressly authorizes punitive damages. (“The action may be brought ... to recover actual and punitive damages for any deprivation of or infringement on the rights of a vulnerable adult.”).
Neither Shotts nor Gessa precludes the severance of the clause prohibiting an arbitration award of punitive damages from the arbitration agreement. As the Supreme Court explained in Gessa, Shotts did not address the issue of the severability of the waiver of punitive damages. 86 So.3d at 489. The arbitration agreement in Gessa did not contain a severability clause, and the Court based its ruling on non-severability upon the combination of the two limitation-of-liability provisions, “when viewed jointly.” Id. at 490. Neither case stands for the proposition that an invalid punitive damages provision in an arbitration agreement, standing alone, is not severable because it goes to the heart of the agreement.
The invalid punitive damages limitation in this case did not go to the heart of the arbitration agreement. Unlike the contract in Gessa, the agreement here allows an arbitration panel to award economic and non-economic damages without limit. The primary thrust of the agreement is “to avoid costly and time-consuming litigation.” Striking the punitive damages limitation would preserve the forum and the finder of fact so central to the agreement. The severance clause declares the intent of the agreement to preserve the agreement in the event “any provision” of the agreement is declared unlawful. Because of the extreme conduct required to justify an award of punitive damages, such damages are recoverable in the rare case. Unlike the situation in Shotts, where the invalidation of an organization’s procedural rules would have required a drastic rewriting of the arbitration agreement, here there is no similar interdependence between the punitive damages prohibition and the remaining clauses of the agreement. Refusing to sever the punitive damages limitation would cut out the heart of the agreement for a peripheral illegality. Allowing severance of the punitive damages limitation preserves the principle that “[pjarties may agree to arbitrate statutory claims, provided [that] the arbitration offers an effective way for vindicating the claimant’s statutory rights.” Alterra Healthcare Corp. v. Bryant, 937 So.2d 263, 266 (Fla. 4th DCA 2006).
For these reasons, we affirm the trial court’s order compelling arbitration and remand to the circuit court to order sever- *302 anee of the punitive damages provision from the arbitration agreement.
POLEN and LEVINE, JJ., concur.

. In Gessa, the court stated that it did not "address” whether the waiver of punitive damages in Shotts was severable because it was unnecessary to do so in light of the Court's ruling on the non-severability of the provision calling "for the imposition of the AHLA rules.” 86 So.3d at 489-90.