DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANNE OBOLENSKY,**
Appellant,

v.

**CHATSWORTH AT WELLINGTON GREEN, LLC** d/b/a **NUVISTA LIVING AT WELLINGTON GREEN,**
Appellee.

No. 4D16-3143

[February 28, 2018]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Thomas H. Barkdull, III, Judge; L.T. Case No. 502015CA011204AB.

Richard D. Schuler of Schuler, Halvorson, Weisser, Zoeller & Overbeck, P.A., West Palm Beach, Esther A. Zaretsky, West Palm Beach, and Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, for appellant.

Rolando A. Diaz and Adilia C. Hedges of Diaz Law Group, Coral Gables, and Dinah Stein of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, for appellee.

FORST, J.

Appellant Anne Obolensky, a nursing home resident who is suing the appellee nursing home for negligence, appeals a non-final order compelling arbitration. Relying upon two Florida Supreme Court opinions that were issued on the same day, *Gessa v. Manor Care of Fla., Inc.,* 86 So. 3d 484 (Fla. 2011) and *Shotts v. OP Winter Haven, Inc.,* 86 So. 3d 456 (Fla. 2011), Obolensky argues the arbitration agreement in her contract with the nursing home cannot be saved by the severance of certain invalid provisions that are also part of the nursing home contract. In so doing, she gives too broad a reading to those supreme court opinions. Accordingly, as set forth below, we conclude that the trial court did not err in its non-final order compelling arbitration.

**Background**

Upon admission to the nursing home, Obolensky signed "Admission and Alternative Dispute Resolution Agreements." The "Admission Agreement" dealt with issues such as "Consent to Treatment," "Financial Agreements," "Confidentiality of Your Medical Information," and "Center Rules and Grievance Procedure." It also included an "Arbitration & Limitation of Liability Agreement," which contains a severability clause stating that "Should any of sub-section A, B, or C provided below, or any part thereof, be deemed invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected." The three sub-sections are as follows: (A) "Arbitration Provision"; (B) "Limitation of Liability Provision"; and (C) "Benefits of Arbitration and Limitation of Liability Provisions."

The Arbitration Provision includes a limitation on discovery (providing that only experts may be deposed), a waiver of the right to appeal the arbitrator's decision, and a waiver of any right to recover attorney's fees and costs. Sub-section A also expressly incorporates sub-section B, the Limitation of Liability Provision.

Sub-section B provides that the purpose of the provision is to limit each party's liability in relation to the agreement. There is no cap on economic damages, but non-economic damages are capped at $250,000, and punitive damages are not allowed.

Sub-section C explains the purpose or benefits of sub-sections A and B and states in part:

> The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration and to agree to a limitation of liability also are supported by the potential benefit of preserving the availability, viability and insurability of a long term care company for the elderly and disable[d] in Florida, by limiting such long term care company's exposure to liability. With this Agreement, the Community is better able to offer its services and accommodations at a rate that is more affordable to you. In terms of the time-savings offered by selecting arbitration, selecting a quick method of resolution is potentially to your advantage.

After Obolensky filed a negligence claim against the nursing home, the latter moved to compel arbitration. Citing *Gessa*, Obolensky opposed the

2

motion. She argued that the arbitration agreement is unenforceable, because two of the limitation of liability provisions in sub-section B violate public policy and are not severable, as they go to the essence of the parties' agreement. The trial court found *Gessa* distinguishable because there was no severability clause in that case. The court granted the motion to compel arbitration with the understanding that the arbitrator would not be deciding the viability of the limitations on liability, as the Florida Supreme Court had already determined that liability limitations were invalid. This non-final order compelling arbitration is the subject of the instant appeal.

## Analysis

"[T]he standard of review applicable to the trial court's construction of the arbitration provision, and to its application of the law to the facts found, is *de novo*." *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 266 (Fla. 4th DCA 2006) (quoting *Fonte v. AT & T Wireless Servs., Inc.*, 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005)). Similarly, we review de novo the question of whether the trial court erred in ruling that the illegal provisions in the arbitration agreement were severable. *Shotts*, 86 So. 3d at 475.

"Arbitration is a preferred method of dispute resolution, so any doubt regarding the scope of an arbitration clause should be resolved in favor of arbitration." *BallenIsles Country Club, Inc. v. Dexter Realty*, 24 So. 3d 649, 652 (Fla. 4th DCA 2009); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) ("By agreeing to arbitrate . . . [a party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." (alterations in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985))); *Franzen v. Magler*, 744 So. 2d 1029, 1031 n.3 (Fla. 4th DCA 1997) ("The legislature has concluded that voluntary arbitration and predictability of outcome are in the public interest . . . .").

There is no dispute in this case that the limitations of liability provisions in the agreement, which cap non-economic damages and prohibit punitive damages, are unenforceable. *See Gessa*, 86 So. 3d at 492; *Alterra*, 937 So. 2d at 266; *Lacey v. Healthcare & Ret. Corp. of Am.*, 918 So. 2d 333, 334 (Fla. 4th DCA 2005). Nonetheless, *Shotts* and *Gessa* do not dictate that the unenforceable limited liability provisions cannot be severed from the valid provisions of the arbitration agreement.

### A. *Shotts* is distinguishable

The Florida Supreme Court in *Shotts* found that an arbitration agreement could not be saved by a severability clause because the

agreement required arbitration in accordance with the American Health Lawyers Association (AHLA) rules and prohibited the award of punitive damages. 86 So. 3d at 478. The AHLA rules in effect at that time changed the plaintiff's burden of proof for certain damages from preponderance of the evidence to clear and convincing evidence. *Id.* The supreme court agreed with the majority of district courts that the limitations of remedies provisions, which restricted rights afforded by the legislature to nursing home residents, violate public policy. *Id.* at 474. Addressing whether the arbitration agreement could be saved in the absence of the limitations of remedies provisions, the court explained the test for severability:

> As to when an illegal portion of a bilateral contract may or may not be eliminated leaving the remainder of the contract in force and effect, the authorities hold generally that a contract should be treated as entire when, by a consideration of its terms, nature, and purpose, each and all of its parts appear to be interdependent and common to one another and to the consideration. Stated differently, a contract is indivisible where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement. On the other hand, a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other.
>
> Whether a contract is entire or divisible depends upon the intention of the parties. And this is a matter which may be determined by a fair construction of the terms and provisions of the contract itself, and by the subject matter to which it has reference.

*Id.* at 475 (quoting *Local No. 234 v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)).

Although there was a severability clause, the supreme court decided it could not sever a provision providing for AHLA arbitration procedures because "[i]f the provision were to be severed, the trial court would be forced to rewrite the [arbitration] agreement and to add an entirely new set of procedural rules and burdens and standards, a job that the trial court is not tasked to do." *Shotts*, 86 So. 3d at 478. The court's discussion of severability only focused on the AHLA procedures, though noting that other courts had addressed severability when the offending provision precluded punitive damages. *Id.* at 475-76.

4

In the instant case, the severance of any illegal arbitration provisions would not entail any rewriting of the arbitration agreement. Instead, as the parties agreed, "the Florida State Statutes concerning arbitration [would] govern the procedure," like section 682.08(2), Florida Statutes (2016) (governing the deposition of witnesses), and the arbitrator would continue to apply the Florida Rules of Evidence and the Florida Rules of Civil Procedure during proceedings. The "essence" of the Arbitration Provision would survive and, as distinguished from *Shotts*, there would be no need to create substitute procedures. Thus, the disposition of the instant case is not controlled by *Shotts*.

## B. *Gessa* is distinguishable

Obolensky's reliance on *Gessa* is similarly misplaced. The *Gessa* agreement was worded and structured similarly to the contract in this case: Part A, "Arbitration Provisions" and Part B, "Limitation of Liability Provision[s]." 86 So. 3d at 486, 488-89. The agreement had the same restriction on depositions, waiver of attorney's fees and costs, and the arbitration provisions in Part A incorporated the liability limitations in Part B. *Id.* at 488. The court found unenforceable the same limitation of liability provisions at issue in this case.

There was no severability clause in the *Gessa* arbitration agreement. The court nevertheless addressed whether the invalid provisions in *Gessa* could be severed pursuant to the standard of severability established in *Shotts/Local No. 234*. *Gessa*, 86 So. 3d at 490. Applying the standard, the court determined that the restrictions on non-economic damages and prohibition of punitive damages were intended to make the extent of liability "reasonably foreseeable" and went to "the essence" of the agreement. *Id.* at 490. The court concluded that these "two provisions constitute the financial heart of the agreement" and, if severed, the trial court would be hard pressed to determine that what remained was a valid contract supported by valid legal promises on both sides. *Id.* at 490-91 (citing *Shotts*, 86 So. 3d at 459).

In the instant case, there are severability clauses; therefore, the supreme court's reasoning in *Gessa* need not extend to the instant case. *See Estate of Deresh ex rel. Schneider v. FS Tenant Pool III Tr.*, 95 So. 3d 296, 301 (Fla. 4th DCA 2012) (holding in part that *Gessa* did not apply because, unlike in *Gessa*, there was a severability clause in the arbitration agreement that was on review on appeal); *see also VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 38 (Fla. 4th DCA 2005) ("Despite the presence of these two [illegal] provisions in the dealer

agreement, we conclude that where the contract contains a severability clause, their presence does not require a holding that the arbitration agreement is similarly unenforceable."); *Fonte*, 903 So. 2d at 1024 (similar).

The Arbitration & Limitation of Liability Agreement begins with an express severability clause: "Should any of sub-section A, B, or C provided below, or any part thereof, be deemed invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected." Thus, if sub-section B Limitation of Liability Provision is deemed invalid, sub-section A Arbitration Provision "will not be affected."[1] This *express* severability clause is a material distinction from *Gessa* that strongly indicates—by the clause's plain terms—that the limited liability provisions were not the essence of the arbitration agreement between the parties. If they were, the parties would not have agreed to the severability clause for the Arbitration & Limitation of Liability Agreement, which states in the "Arbitration Provision," in bold type, "The parties to the Agreement further understand that a jury will <u>not</u> decide their case."

## C. The Limitation of Liability Provision is neither the "financial heart" of the Admission and Alternative Dispute Resolution Agreements nor the "true essence" of the Arbitration & Limitation of Liability Agreement

Obolensky relies upon language in both *Shotts* and *Gessa* to argue that, severability clause notwithstanding, the removal of provisions that are the "financial heart of the agreement" but (arguably) violate public policy, would "gut" the essence of the parties' agreement and thus render the entire agreement invalid. This argument fails.

The Admission Agreement provided for the rights and responsibilities of the parties relating to the resident's stay at the nursing home, including the room and board rate. These terms remain in force.

---

[1] The acceptance of severability in this agreement is further illustrated by the Limitation of Liability Provision, which provides, "[s]hould sub-sections [2.] a, b, c, and/or d . . . be deemed invalid[,] the validity of the remaining sub-sections will not be affected." Sub-sections b and d were, respectively, the $250,000 cap on non-economic damages and waiver of punitive damages—the provisions deemed to be invalid by the trial court. Thus, the parties contemplated not only the arbitration provisions surviving invalid liability limitations, but also the valid, remaining liability provisions themselves.

Even setting aside the Admission Agreement, and looking only to the Arbitration & Limitation of Liability Agreement, it is clear that "the true essence" of the Admission and Alternative Dispute Resolution Agreements was, as its name suggests, arbitration, and its financial heart was the reduced costs and time-saving benefits accompanying arbitration.[2] In fact, under the subheading "Benefits of Arbitration & Limitation of Liability Provisions" is the statement that "[t]he parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system." To ensure the viability of this clause, the parties agreed to severability should any provision be later deemed invalid.[3] Applying *Shotts* and *Gessa* in a manner to negate the arbitration provisions would ignore the fact that this agreement had a severability clause that was intended to be used in a situation as was presented here; by effectuating the severability clause, the parties were able to retain the "essence" of the agreement at issue.

## Conclusion

When enforcing an agreement to arbitrate, courts must "give effect to the contractual rights and expectations of the parties." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *see also* Michael Pillow, *Liberty over Death: Seeking Due Process Dimensions for Freedom of Contract*, 8 Fla. A&M U.L. Rev. 39, 52 (2012) ("Parties should be able to negotiate and sign contracts . . . knowing that courts will likely enforce their terms with only limited exceptions."). The trial court's order compelling arbitration effectuates the intention of the parties at the time the agreement was signed and, accordingly, we affirm.

*Affirmed.*

Warner and May, JJ., concur.

\*     \*     \*

---

[2] We previously noted the same when viewing a similar agreement: "The primary thrust of the [arbitration] agreement is 'to avoid costly and time-consuming litigation.'" *Deresh*, 95 So. 3d at 301.

[3] We note that the one party that is negatively affected by the invalidation of the limitation of liability sub-provisions, the nursing home, is the party that is seeking to enforce the valid portions of the Arbitration & Limitation of Liability Agreement provisions.

*Not final until disposition of timely filed motion for rehearing.*